Michael Patrick Tatum
Pro Se Plaintiff
1101 N. Main St., A717
Los Angeles, CA 90012
themichaeltatum@gmail.com
(213) 444-9807

United States Courts
Southern District of Texas
FILED

NOV 2 0 2025

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

MICHAEL PATRICK TATUM,

individually and as next friend of minor J.T.,

Plaintiffs,

v.

KATIE DENISE HARTSELL, et al.,

Defendants.

Case No.:

VERIFIED COMPLAINT FOR EMERGENCY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF; DECLARATORY JUDGMENT; EQUITABLE RESTITUTION AND DAMAGES

(42 U.S.C. §§ 1983, 1985, 1986, 1988)

JURY TRIAL DEMANDED

That the power to adjudicate carries within it the power to destroy; that the power to destroy, when unrestrained by law, becomes tyranny." Justice Robert H. Jackson warned that "procedural fairness and regularity are of the indispensable essence of liberty." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 179 (1951). When courts themselves abandon that fairness, when due process is replaced by fabrication, the Constitution is not merely violated; it is nullified by those sworn to protect it.

Plaintiffs Michael Patrick Tatum, individually and as next friend of minor J.T., by and through his own verified filings and under penalty of perjury pursuant to 28 U.S.C. § 1746, for claims against Defendant Katie Denise Hartsell, and additional Defendants acting in concert under color of state and federal law, allege and aver as follows:

1

INTRODUCTION

1. The Constitution's incorporation doctrine forms the core procedural and substantive guarantees of liberty, by which both state and federal power are restrained, and the rights of individuals are secured against arbitrary action. The First Amendment protects the citizen's right to speak, to petition, and to expose wrongdoing without fear of punishment, for "no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943). The Fourth Amendment ensures that the government may not intrude upon the body, home, or child of any person without lawful cause, warrant, or due process, for "the right of the people to be secure against unreasonable searches and seizures" is the cornerstone of a free society. Mapp v. Ohio, 367 U.S. 643, 655 (1961). The Fifth Amendment guarantees that no person shall "be deprived of life, liberty, or property, without due process of law," Miranda v. Arizona, 384 U.S. 436, 479 (1966), and the Sixth Amendment assures every citizen the right to a fair and public proceeding before an impartial tribunal, Gideon v. Wainwright, 372 U.S. 335, 344 (1963). The Fourteenth Amendment extends these safeguards to every state actor, binding all who wield governmental authority to the same constitutional standard, prohibiting any State from depriving a person of life, liberty, or property without due process, or from denying equal protection under law. Bolling v. Sharpe, 347 U.S. 497, 500 (1954). Together, these Amendments forbid any government, whether municipal, state, or federal, from using its machinery of courts, police, or agencies to silence, seize, or destroy what it could not lawfully command.

2. And yet, the defendants, acting in concert under color of state law, systematically contravened every one of these constitutional guarantees. They used the machinery of the state not to protect liberty but to dismantle it, weaponizing process to achieve by fraud what they

could never command by law. The seizure of a protected minor without notice, hearing, or lawful warrant was an unreasonable and unlawful seizure under the Fourth Amendment and a deprivation of liberty under the Fifth and Fourteenth Amendments. Fabricated judicial orders, falsified filings, and the use of counterfeit court documents to justify the unlawful seizure and ongoing concealment of a child constitutes acts of fraud, and obstruction.

3.This case is about the systematic dismantling of constitutional safeguards by state actors who, through threats and coercion, orchestrated the unconstitutional seizure of a minor child, J.T. This seizure immediately effectuated a state-created danger, deliberately placing a protected child back into the hands of his abuser while simultaneously stripping his father, Michael Tatum, of his fundamental Fourteenth Amendment rights to parent and to protect his child from harm. When the judicial system, including a federal judiciary, failed in its duty to intervene, it became complicit in this ongoing deprivation.

4.This case is about the Defendants' actions to deprive the rights of others at any cost. Actions that are not random but are the product of a consistent and predictable pattern of unconstitutional conduct, a modus operandi that is triggered whenever their unlawful control is threatened: they THREATEN opposition, FABRICATE evidence and fraudulent legal instruments, SEIZE or MAINTAIN unlawful control of the child, SUPPRESS all exculpatory evidence that exposes the fraud, LEGITIMIZE their actions through the entry of void judicial orders, and relentlessly RETALIATE against anyone who attempts to expose the truth. It is this unconstitutional enterprise—one that weaponizes state power to seize a child and punish protected First Amendment speech, that this action seeks to dismantle.

5. The judiciary is the guardian of constitutional liberty and bears an affirmative duty to restrain unlawful exercises of power. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803), established that "it is emphatically the province and duty of the judicial department to say what the law is." That duty extends beyond adjudication of past wrongs to the prevention of ongoing constitutional violations. Ex parte Young, 209 U.S. 123, 155–56 (1908). When acts taken under

color of state law operate to threaten the safety of human life, the protection of property, and the rights of life, liberty or property without due process, the courts must act to "guard the Constitution and the rights of individuals from encroachment." Sterling v. Constantin, 287 U.S. 378, 397 (1932). The facts presented here describe a continuing deprivation, the unlawful seizure and concealment of a minor child through a jurisdictionally void process that persists to this day. This Court, vested with equitable power under Article III and 28 U.S.C. §§ 1331, 1343, and 1964, has a duty to defend the Constitutional principles and rights at stake.

## JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983, 42 U.S.C. §§ 1985, and 42 U.S.C. §§ 1986, based on Defendants coordinated deprivations of rights secured by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7.This Court may grant declaratory relief under 28 U.S.C. §§ 2201–2202 and award injunctive, monetary, and other appropriate relief under 28 U.S.C. § 1343(a) and 42 U.S.C. § 1988. Plaintiff seeks temporary, preliminary, and permanent injunctive relief pursuant to Federal Rule of Civil Procedure 65, together with compensatory damages, attorneys' fees, costs, and equitable relief necessary to redress ongoing violations of federal law. In Mitchum v. Foster, 407 U.S. 225 (1972), the Supreme Court held that § 1983 provides an express exception to the Anti-Injunction Act, authorizing federal courts to issue injunctions against unconstitutional conduct carried out through state proceedings. Plaintiff's claims arise directly under § 1983 and seek to enjoin unconstitutional acts committed under color of state law.

8.This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all related claims arising from the same nucleus of operative fact as the federal claims. Venue is proper in the Southern District of Texas, Houston Division, under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions giving rise to the claims, including interstate financial transactions, communications, and acts of concealment occurred within this judicial district.

9.The relief sought is prospective and directed at continuing violations of federal law by state officials acting under color of law, this action falls squarely within the Ex parte Young doctrine. See Skinner v. Switzer, 562 U.S. 521, 532 (2011). U.S. Const. art. VI, cl. 2, compels this Court's intervention where state procedures are used to shield ongoing constitutional violations (Haywood v. Drown, 556 U.S. 729, 736–37 (2009)).

## ABSTENTION DOCTRINES DO NOT APPLY

10.Abstention under Younger v. Harris, 401 U.S. 37 (1971), is inapplicable. there is no pending or ongoing criminal state action brought by the state or a state agency, there is no pending or ongoing government-initiated civil enforcement proceedings, and Plaintiffs do not seek to challenge the constitutionality of a state law.

11.Rooker-Feldman doctrine is inapplicable; this case does not seek appellate review of any state judgment but challenges independent constitutional violations and extrinsic fraud. Federal jurisdiction remains proper under Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); and Weaver v. Texas Capital Bank, N.A., 660 F.3d 900, 904 (5th Cir. 2011).

12.Pullman abstention does not apply, as this case does not present an unclear question of state law whose resolution could avoid a constitutional determination. Thibodaux abstention is irrelevant, as there are no ambiguous or sensitive state statutory provisions requiring clarification

before federal adjudication. Burford abstention is inapposite, as this case does not involve any specialized or complex state administrative scheme. Colorado River abstention does not apply because there is no parallel state proceeding. There is no risk of duplicative litigation or conflicting judgments.

## PARTIES

13. Plaintiff Michael Patrick Tatum resides in Los Angeles, California. He holds advanced degrees in artificial intelligence and applied physics, possesses professional expertise in forensic intelligence analysis, and is a subject matter expert in product management. He is the natural father of minor J.T. and brings this action individually and as next friend of his minor son under Rule 17(c).

14. Plaintiff J.T. is the minor son of Plaintiff Michael Patrick Tatum and a citizen of California. Because J.T. is a minor without a legally appointed representative, he brings this action through his natural father, Plaintiff Tatum, as next friend pursuant to Federal Rule of Civil Procedure 17(c)(2). Together, Plaintiffs are direct victims of the unlawful seizure, concealment, and continuing deprivation of rights alleged herein.

15. Defendant Katie Hartsell ("Katie Hartsell") is an adult domiciliary of both Texas and California. At all relevant times, Hartsell acted jointly with state and local officials and private participants operating under color of law to plan, execute, and conceal the unlawful seizure and continued concealment of minor J.T. Katie Hartsell knowingly participated in the creation, transmission, and use of fraudulent judicial documents and communications across state and international lines, and engaged in intimidation and coercive control to suppress truthful disclosures and obstruct justice. Her conduct included the unlawful seizure and transport of a minor to obstruct lawful parental rights, child endangerment through concealment and flight, and

coordinated fraudulent activity with state actors and court personnel. Katie Hartsell is sued in her individual capacity.

16.Defendant Teri Hartsell ("Teri Hartsell") resides in Texas and materially financed, supported, and facilitated the unlawful acts described herein. Acting jointly with Defendant Katie Denise Hartsell and other co-conspirators, Teri Hartsell participated in the funding, interstate transport, and concealment of minor J.T.  She provided financial resources used to pay for interstate and international travel and lodging that enabled the continuation of the kidnapping, concealment, and coercive control of the minor.  Teri Hartsell's actions were undertaken to deprive Plaintiffs of rights secured by the Constitution and laws of the United States and to obstruct lawful investigation of the child. Teri Hartsell is sued in her individual capacity.

17.Defendant John Hartsell ("John Hartsell") resides in Texas and materially financed, supported, and facilitated the unlawful acts described herein. Acting jointly with Defendant Katie Denise Hartsell and other co-conspirators, John Hartsell participated in the funding, interstate transport, and concealment of minor J.T. He provided financial resources used to pay for interstate and international travel, and lodging that enabled the continuation of the kidnapping, concealment, and coercive control of the minor.  John Hartsell's actions and lack of actions were undertaken to deprive Plaintiffs of rights secured by the Constitution and laws of the United States and to obstruct lawful investigation and recovery of the child. John Hartsell is sued in his individual capacity.

18.Defendant Melanie Shornick ("Shornick") is a licensed attorney who, at all relevant times, acted under color of state law by exploiting her access to court filing systems, personnel, and procedural channels to facilitate, direct, and conceal unlawful activity. While purporting to represent Defendant Katie Denise Hartsell, Melanie Shornick orchestrated and executed schemes

involving the creation, alteration, and transmission of fraudulent judicial orders, falsified case records, and fabricated legal instruments used to effectuate the kidnapping, unlawful seizure, and continued concealment of minor J.T.  Melanie Shornick also engaged in extortionate conduct, coercion, and retaliation intended to suppress lawful reporting, coerce silence, and obstruct investigation.  Her activities included impersonating court officials, falsifying government records, fabricating signatures and orders, and coordinating the illegal seizure and concealment of funds obtained through racketeering activity. Shornick's conduct constituted acts of kidnapping, extortion, conspiracy against rights, obstruction of justice, witness tampering, retaliation against witnesses, mail fraud, wire fraud, falsification of records, and identity fraud, Melanie Shornick is sued in her individual capacity.

19.Defendant F. Edward Navarro ("Navarro") purported to act as "Minor's Counsel" pursuant to an unlawful appointment that lacked any lawful basis or judicial authority. Acting under color of state law, F. Edward Navarro used that false appointment to participate in the unlawful deprivation of Plaintiffs' constitutional rights and the concealment of minor J.T. In coordination with other defendants, F. Edward Navarro prepared and submitted fraudulent pleadings, falsified minute orders, and other fabricated judicial instruments that enabled and concealed the unlawful seizure and continued deprivation of the child. His conduct constituted acts of deprivation of rights under color of law, conspiracy against rights, obstruction of justice, mail fraud, wire fraud, falsification of records, and false statements. F. Edward Navarro is sued in his individual capacity.

20.Defendant Dennis F. Hernandez ("Dennis Hernandez") serves as a Commissioner of the Superior Court of California, County of Los Angeles. At all relevant times, Dennis F. Hernandez acted under color of state law and beyond the scope of lawful judicial authority by

fabricating, signing, and causing the entry of void judicial instruments that deprived Plaintiffs of constitutional rights and enabled the unlawful seizure and concealment of minor J.T. Dennis F. Hernandez issued fraudulent orders and minute entries absent jurisdiction or due process in furtherance of a coordinated racketeering enterprise operating through official court mechanisms. His conduct constituted acts of deprivation of rights under color of law, conspiracy against rights, obstruction of justice, falsification of records, mail fraud, and wire fraud. Dennis F. Hernandez is sued in his individual capacity for acts taken outside the scope of judicial immunity.

21. Defendant Steven Moss ("Steven Moss") is a licensed psychologist who, at all relevant times, acted under color of state law by knowingly providing fabricated therapeutic declarations, falsified professional conclusions, suppressed abuse disclosures, obstructed lawful protections, and provided fraudulent and unethical custody recommendations favorable to Katie Hartsell. Moss deliberately disregarded mandatory reporting laws submitted false psychological assessments without evaluation and colluded with Melanie Shornick to discredit substantiated injuries to minor J.T. to eliminate procedural safeguards for Michael Tatum. Steven Moss's conduct constituted predicate acts of conspiracy against rights, deprivation of rights under color of law, obstruction of justice, witness tampering, mail fraud, and wire fraud. Moss is sued in his individual capacity.

22. Defendant Carol Chacon ("Carol Chacon") is an attorney employed by the Los Angeles County Counsel's Office. At all relevant times, Carol Chacon acted under color of state law by coordinating with judicial officers and court personnel to present falsified records, obstruct lawful investigations, and suppress exculpatory evidence concerning the unlawful seizure, threat to the safety of human life, and concealment of minor J.T.  Chacon's conduct

constituted acts of obstruction of justice, falsification of records, mail and wire fraud, and deprivation of rights under color of law.  Carol Chacon is sued in her individual capacity.

23. Defendant Thomas Plummer ("Thomas Plummer") acted jointly with private participants operating under color of law to support and conceal the unlawful seizure and removal of minor J.T. from his legal custodian.  At all relevant times, Thomas Plummer engaged in witness tampering, intimidation, and obstruction of justice intended to suppress truthful disclosures, protect the perpetrators, and prevent lawful recovery of the child. His actions were undertaken in concert with other co-conspirators to facilitate and conceal the unlawful seizure and ongoing deprivation of Plaintiffs' constitutional rights.  His conduct constituted acts of kidnapping, obstruction of justice, witness tampering, conspiracy against rights, and deprivation of rights under color of law. Thomas Plummer is sued in his individual capacity.

24. Defendant Hernan D. Vera ("Judge Vera") is an adult domiciliary of California and, at all relevant times, served as a judicial officer of the United States District Court for the Central District of California. Acting under color of law and outside the scope of lawful judicial authority, Vera participated in the creation, authorization, and entry of void judicial instruments and text-only rulings that deprived Plaintiffs of constitutional and statutory rights. In coordination with other defendants, Judge Hernan D. Vera facilitated the submission and maintenance of falsified docket entries and unauthorized orders to obstruct justice, conceal procedural fraud, and perpetuate an unlawful deprivation of rights. Pursuant to Pinkerton v. United States, 328 U.S. 640 (1946), the Supreme Court held that a co-conspirator is criminally liable for the substantive offenses of other conspirators when those offenses are committed in furtherance of the conspiracy and are reasonably foreseeable. Judge Hernan D. Vera's conduct constituted acts of obstruction of justice, falsification of records, and deprivation of rights under

color of law Pursuant to Rankin v. Howard, 633 F.2d 844 (9th Cir. 1980), immunity does not extend to a judge who conspires with others to deprive constitutional rights. Judge Hernan D. Vera is sued in his individual capacity for actions taken outside the scope of judicial immunity.

25. Defendant Christine Ngo ("Christine Ngo") is an adult domiciliary of California and a social worker employed by the Los Angeles County Department of Children and Family Services. Christine Ngo acted under color of law by fabricating and suppressing DCFS records. Christine Ngo is sued in her individual capacity.

26. Defendant Rene Martinez ("Rene Martinez") is an adult domiciliary of California and a social worker employed by the Los Angeles County Department of Children and Family Services. Rene Martinez acted under color of law by altering or concealing child-welfare records. Rene Martinez is sued in her individual capacity.

27. Defendant Los Angeles County Superior Court ("LASC") is named as an institutional defendant for its deliberate indifference, administrative complicity, and ongoing supervisory failure, which enabled a persistent pattern of constitutional violations committed by its judicial officers, clerks, and court-appointed agents. Acting under color of state law, the Superior Court maintained and tolerated customs, policies, and practices that directly caused or permitted the fabrication of judicial documents, the obstruction of lawful process, and the deprivation of federally protected rights. This institutional misconduct constitutes a Monell violation actionable under 42 U.S.C. § 1983, arising from the Court's failure to supervise, train, and discipline personnel engaged in acts of fraud, forgery, obstruction of justice, and deprivation of rights under color of law.

28. Defendants DOES 1 through 50 are individuals and entities whose true names and capacities are presently unknown to Plaintiffs. Each Doe Defendant acted under color of law or

in concert with state and federal actors to deprive Plaintiffs of their constitutional rights. Plaintiffs will amend this Complaint to identify and name these defendants as they are discovered.

29.All Defendants acted jointly and in concert to deprive Plaintiffs of constitutionally protected rights. At all times, their actions were taken under color of state law, and each Defendant is directly and proximately responsible for the injuries described herein.

## FACTUAL ALLEGATIONS

30.On July 15, 2022, Michael Tatum, acting on the best interest of minor J.T., provided notice to Katie Hartsell that, due to credible and immediate safety concerns, including an impending out-of-state trip presenting a serious risk of physical and emotional harm, it was advised to not transition minor J.T. into her care. Michael Tatum informed Katie Hartsell he would immediately seek emergency protective relief through lawful judicial process.

31.Despite safety concerns expressed by minor J.T., Katie Hartsell immediately declared that she was on route to Michael Tatum's residence and would be bringing the police. Upon arrival, Katie Hartsell placed a 9-1-1 call to the Los Angeles Police Department ("LAPD"), deliberately omitting material facts and misrepresenting the circumstances to prompt a police response. Her objective was to gain access to the property with law-enforcement assistance and to remove the child.

32.LAPD officers arrived; they requested Katie Hartsell to produce lawful custody orders authorizing possession of the minor. Katie Hartsell admitted she had no such orders. The officers informed her that they lacked authority to intervene or compel transfer of the child. without a valid court order and further advised her of the legal documentation required before law

enforcement could facilitate such an exchange. This halted Katie Hartsell's first attempted

unlawful seizure of minor J.T. that day.

33.During the conversation, Katie Hartsell informed the LAPD officers that Melanie

Shornick was encouraging her to seek full custody of minor J.T., but that it had been "too

expensive" until now, adding that she intended to proceed through means already predetermined

to ensure a favorable outcome.

34.The officers advised that the matter was civil, not criminal and that Michael Tatum

was fully within his rights under existing law. One officer clarified the legal threshold

unmistakably: if a valid court order existed and was ignored, that would be child abduction. In

the absence of such an order, the attempted removal by Katie Hartsell fell squarely within that

definition.

## THE UNLAWFUL SEIZURE OF MINOR J.T.

35.In concert with Katie Hartsell, Melanie Shornick's response was not the pursuit of due

process for minor J.T. but the orchestration of a coordinated campaign of intimidation, attempted

extortion, and coercion. Acting as both legal counsel for Katie Hartsell, Melanie Shornick issued

unlawful and coercive threats against Michael Tatum, willfully disregarded the minor child's

safety, and delivered menacing warnings that "all options" were being considered, conduct

demonstrating retaliation and intimidation.

36.This threat materialized later that same day when Katie Hartsell forcibly and

unlawfully entered Michael Tatum's residence in the late afternoon of July 15, 2022, and

violently assaulted him in the presence of minor J.T. The assault resulted in Katie Hartsell's

arrest by the Los Angeles Police Department for felony domestic violence.

37. Following the arrest, Katie Hartsell made a post-arrest admission stating, "I just knew y'all couldn't do anything. I knew that I didn't have a court order with a date on it, so there was no proof that Julian was supposed to be with me.".

38. The officers reminded her that any such action without a valid, judge-signed court order would constitute child abduction.

39. Shortly after Katie Hartsell's felony domestic violence arrest, a judicial officer issued an Emergency Protective Order (EPO) to Michael Tatum and minor J.T. from Katie Hartsell. An EPO is the highest form of protective order authorized in California and carries immediate, exclusive legal effect. While in force, no contradictory or overlapping protective order may lawfully exist that would reclassify a restrained party as a protected party. The existence of the EPO rendered any subsequent order naming Katie Hartsell as a protected person legally impossible.

40. On July 19, 2022, the Los Angeles Superior Court issued additional protective orders for Plaintiffs. This judicial decree vested Michael Tatum with exclusive parental authority of J.T, extinguished all of Katie Hartsell's parental authority, and found Katie Hartsell a risk of abducting the minor J.T.

41. On July 20, 2022, Detective Christopher Albizures of the Los Angeles Police Department obtained a judicially authorized arrest warrant for Katie Hartsell under California Penal Code § 273.5(a), following an LAPD investigation that identified her as the alleged perpetrator in a case involving intimate partner violence resulting in injury.

42. On July 21, 2022, Melanie Shornick, through Katie Hartsell's criminal counsel Sarah Azari, emailed Michael Tatum stating her intent to file an ex parte application, demanding the

minor J. T's "immediate return" to Katie Hartsell pursuant to the terms of a September 3, 2019,

judgment, a judgment already superseded and void by the active orders then in force.

43. Michael Tatum notified Melanie Shornick of the July 19, 2022, orders that now

governed, and any attempt to proceed under the void 2019 judgment would be in defiance of a

valid judicial decree. Melanie Shornick, willfully rejected the existence of the controlling order,

falsely claimed that no copy had been provided to her, and declared her intent to proceed ex parte

regardless.

44. Later that same day, Melanie Shornick continued violating the protective orders by

informing Michael Tatum that she would be trailing her ex parte for another twenty-four hours.

45. On July 22, 2022, at approximately 11:05a.m., Melanie Shornick initiated service of a

forged and counterfeit temporary restraining order (DV-110) while knowingly misrepresenting

its legal authority. She falsely asserted that the new order "amends and supersedes" the binding

protective orders issued on July 19, 2022. Melanie Shornick further claimed that the July 19

order was "ineffective" because Katie Hartsell had "never been served."

46. This assertion was patently false. Under California law, a domestic violence

restraining order becomes effective upon judicial signature; service is not a prerequisite to its

legal force.

47. Melanie Shornick directly contradicted the express language of the court's order and

violated her professional duty of candor. Her misrepresentation created a pretext to justify the

unlawful seizure of a protected minor from lawful custody.

48. Melanie Shornick's threats, coercion, and extortion placed Plaintiff in an impossible

position: obey the valid court order protecting his son or submit to a coerced, unlawful seizure

under threat of manufactured legal and physical peril. Melanie Shornick orchestrated a

"transition" at a police station, knowingly using LAPD as an unwitting instrument to effectuate the unlawful seizure of the minor J.T.

49. At 1:45 PM, Melanie Shornick issued a final threat: "You will be deemed to have violated the TRO if Julian is not delivered to Katie's care." Under this duress, Plaintiff was compelled to surrender his son at 2:14 PM

## A DOCUMENTED CRIME

50. Upon the issuance of the July 19, 2022, judicial orders granting Plaintiff exclusive parental authority, the Defendants' activities accelerated into a series of unethical communications and the creation of counterfeit documents.

51. Melanie Shornick documents that on July 20, 2022, that a "Telephone call with Cora from clerk's office at the Los Angeles Superior Court re Confidential CLETs form and processing of restraining order." This ex parte communication (if authentic) with court staff regarding the processing of documents was an improper and unethical attempt to navigate the court's administrative functions outside of formal, noticed procedures.

52. Melanie Shornick documents that on July 21, 2022, she held "Multiple short calls with Katie" followed by the drafting of an "ex parte notice re return of J.T. to Katie,". Melanie Shornick again engaged in improper back-channeling, recording in her records to a "Telephone call with court clerk in Department 65 re status of restraining order paperwork.

53. Metadata evidence confirms that the TRO documents on behalf of Katie Hartsell (DV-109 and DV-110) were created on July 21, 2022, at 6:26 PM and 6:21 PM, respectively, well after the court's administrative cutoff for that day.  The documents Melanie Shornick and Katie Hartsell utilized were backdated with the appearance of having been filed on July 21.

54. At 11:55 AM, Melanie Shornick sent an email to Michael Tatum threatening enforcement of a new TRO that she falsely claimed, "amends and supersedes the TRO issued by this Court on 7/19/22."

55. However, forensic metadata analysis of the documents ultimately filed with the court proves that the documents served on Michael Tatum on Friday, July 22, 2022, were a legal fiction. The official court-filed versions of the Amended DV-109 and the first Amended DV-110 were not created until Monday, July 25, 2022, at 11:18 AM and 12:07 PM, respectively. This is further corroborated by the court docket, which shows the documents were not file-stamped until July 25.

56. Melanie Shornick knowingly threatened Plaintiff with, and coerced his compliance through, "judicial orders" that had not been filed and did not yet exist.

57. Katie Hartsell's DV-140 order [ served on Plaintiff as part of the fraudulent July 22 package shows that the box's that allocate physical and legal authority, along with the Child Visitation boxes are unchecked. California law clearly indicates that orders are not enforceable without the appropriate marks. The version filed with the court on July 25 shows the box for "Other Visitation" checked, materially altering the substance of the order after service on Michael Tatum.

58. The fraudulent activity was compounded by a "Non-Appearance Case Review" minute order dated July 22. This order falsely stated that an amended TRO had been "signed and filed on July 21," a date on which no such order existed, and which was issued by Dennis Hernandez, who lacked jurisdiction. This minute order functioned as a post hoc cover, creating the illusion of lawful process to conceal an unlawful seizure carried out under color of law.

59. After the unlawful seizure of minor J.T. on July 22, 2022, Katie Hartsell, initiated the removal of minor J.T. out of California to Houston within the Texas Southern district, and continues to do so as of this date. This is further corroborated by Katie Hartsell's direct testimony through Melanie Shornick on January 5, 2023: "Q: DID YOU GET TO GO TO TEXAS WITH JULIAN? A: NOT AS SCHEDULED. I HAD TO WAIT UNTIL I GOT A COURT ORDER TO GET HIM BACK FROM MICHAEL".

## AN ONGOING STATE-SANCTIONED KIDNAPPING OF A CHILD (UNDER 12)

60. From July 22, 2022, to July 9, 2025, Defendants executed a continuum of at least 31 sham proceedings, all executed through void jurisdictional rulings that systematically deprived Plaintiffs of fundamental liberty and property rights in familial association.

61. This pattern is defined by the lack of stipulated agreement authorizing the judicial power of Commissioner Dennis F. Hernandez (Cal. Const. art. VI, § 21; CCP § 259(d)), rendering every order he issued during this period void ab initio (void from inception).

62. The systematic scheme of due process deprivation further includes: the persistent absence of Findings and Orders After Hearing (CRC 5.125); the issuance of orders despite un-filed motions for modification (Fam. Code §§ 3022, 3087; CRC 5.92); evidentiary voids (Fam. Code § 3011); calculated ex parte abuses (CRC 3.1200; Fam. Code § 3064); and the use of the judicial process following a self-struck disqualification (CCP § 170.3(c)(3)).

## THE DELIBERATE FABRICATION AND SUPPRESSION OF EVIDENCE

63. On or about August 2, 2022, Melanie Shornick, in proceedings before the Los Angeles County Superior Court, knowingly submitted a falsified DCFS report in response to a Domestic

Violence Restraining Order and timeline of abuse filed by Plaintiffs Michael Patrick Tatum and the minor J.T.

64. The report deliberately reversed or omitted material facts, reclassified visible injuries previously attributed to abuse as freckles, pimples, or accidental, and inserted false denials to contradict J.T.'s prior disclosures. The reclassification of the DCFS report which LAPD contemporaneously cited as "suspected (substantiated) physical child abuse by suspect Katie Hartsell to victim the minor J.T." in its 2022 charging documents, was altered post-arrest, without forensic reinvestigation, and used to discredit new evidence.

65. Christine Ngo, acting under color of law in her capacity as a social worker employed by the Los Angeles County Department of Children and Family Services, collaborated with Melanie Shornick in the preparation and submission of the falsified August 2, 2022, DCFS report.

66. Christine Ngo knowingly advanced a false narrative to discredit minor J.T.'s abuse disclosures against Katie Hartsell. Christine Ngo testified under oath during a jurisdictionally void DVRO hearing that J.T. denied abuse. The Glendale Police records and DCFS logs show that J.T. had, in fact, disclosed maternal abuse to her.The reclassification of the DCFS report which LAPD contemporaneously cited as "suspected child abused(Injury) by suspect Katie Hartsell to victim the minor J.T. " in its 2022 charging documents, was altered post-arrest, without forensic reinvestigation, and used to discredit new evidence.

67. Melanie Shornick initiated illegal subpoenas to law enforcement before they were made available to third parties. Melanie Shornick, altered official records from a Glendale Police Department child abuse investigation that pertained to minor J.T. The alterations included visible forgeries and facial contradictions within investigative documents. These acts misrepresented

material findings for the purpose of obstructing the admissibility of incriminating police

evidence

68. Melanie Shornick altered the investigative summaries submitted into the court record.
These alterations included the removal of negative findings, insertion of exculpatory narratives
unsupported by source documentation, and the forensic laundering of false information into
judicial proceedings.

DOCUMENTED COLLUSION

69. On December 21, 2022, the minor J.T. participated in a therapy session with Steven
Moss, from approximately 3:30 PM to 4:00 PM. During this session, the minor J.T. disclosed to
Steven Moss that he had been physically harmed by Katie Hartsell.

70. At 4:54 PM, on December 21, 2022, Steven Moss sent a text message to Michael
Tatum, stating, "I filed a verbal report with a social worker, and I'll do the online written report
later tonight when the case file becomes available for me to finish." However, investigation
records show that the actual time Steven Moss made a report to the child protective hotline
regarding the minor J.T.'s disclosure was 7:14:11 PM.

71. On December 22, 2022, during a child abuse investigation with the Glendale Police
Department, the minor J.T. stated that his mother, Katie Denise Hartsell, grabbed him by the
back of the head and slammed his face into a wall. He told officers she slapped him across the
face, rubbed his mouth with a towel until he cried, and warned him not to tell anyone or he
wouldn't see her again. He affirmed that these statements were true. He denied that his father
ever told him what to say. When asked directly whether he felt safe with his mother, Julian
answered, "No."

72. On December 22, 2022, Katie Denise Hartsell admitted to law enforcement that she was contacted by Julian's therapist, stating: "Julian's therapist called me last night and said that Julian in his session with his dad said that I pushed him against the wall." During a separate interview on December 22, 2022, Tom Plummer confirmed the therapist's contact, stating: "He reported it to the child's therapist and they... the therapist reached out to the police, lawyers, us.

73. On December 22, 2022, during a recorded police interview, Katie Hartsell admitted that enrolling minor J.T. in therapy was a calculated step to alter custody, not for the child's benefit, but to build a favorable litigation record. In her own words, Katie Hartsell stated, "I'm trying to get more custody of my kid... Getting him in therapy was the first step," and further explained, "Julian just started therapy... we're already making progress... I think, okay, a couple more months, we're going to have some more useful information.".

74. During the December 22, 2022, Glendale Police investigation, John and Teri Hartsell knowingly intervened to assist in obstructing a lawful investigation to preserve the unlawful concealment of the minor J.T. Teri Hartsell knowingly provided the investigating officer false statements of facts while John Hartsell failed to provide investigating officers the details of the unlawful seizure of minor J.T.

75. On December 23, 2022, during a Glendale Police Department child abuse investigation, Melanie Shornick created a counterfeit ex parte order to erase the minor child J.T.'s abuse disclosure, and create a false custody for the ongoing unlawful seizure of the minor J.T.

76. The December 27, 2022, minute order was created with no appearances, the matter not called for a hearing, deficient transfer into a different Dept, and the order only being sent to Melanie Shornick.

77. Shortly after the conclusion of the child abuse investigation, utilizing illegitimate subpoenas, Melanie Shornick altered official records from the Glendale Police Department child abuse investigation that pertained to minor Plaintiff J.T. The alterations included visible forgeries and facial contradictions within investigative documents. These acts misrepresented material findings for the purpose of obstructing the admissibility of incriminating police evidence.

## UNLAWFUL APPOINTMENT OF F. EDWARD NAVARRO

78. On January 6, 2023, Melanie Shornick, without authority, made a void appointment of F. Edward Navarro as Minor's Counsel. This order (FL-323) appointing F. Edward Navarro as Minor's Counsel, entered without a valid stipulation, hearing, or statutory findings. The record falsely recites that a hearing was held with all parties present, when no such hearing occurred.

79. On May 12, 2023, in a jurisdictionally void hearing, Michael Tatum was grossly deprived of due process of law as the court unlawfully stripped him of his lawful custody of minor J.T.

80. Steven Moss was utilized to make unlawful custody recommendations to legitimize the process and in doing so violated numerous professional rules of conduct and ethical standards. This recommendation from Steven Moss occurred verbatim as Katie Hartsell's statement to the Glendale Police officer on December 22, 2022, claimed.

81. F. Edward Navarro failed to conduct any investigation, challenge the court's narrative, or independently represent minor Plaintiff J.T., F. Edward Navarro fabricated his entire interaction with the minor J.T. The only point of contact was November 14, 2023, 11 months after his void appointment.

82. On November 14, 2023, Edward Navarro has a conversation in which the minor J.T. discloses that: (1) his mother tells him to say he wants less time with his father; (2) he is afraid to tell her the truth because she might get mad or hurt him; (3) she talks badly about his father; (4) he only feels "sometimes" safe in her care; (5) she has told him before she is going to hit him; and (6) he feels unsafe in therapy with Dr. Moss.

83. During a jurisdictionally void hearing on November 15, 2023, F. Edward Navarro appeared in court and misrepresented Julian's disclosures. He stated that the minor J.T. "doesn't remember" what his mother said that she "has never hit him," that she merely "raises her voice from time to time," the minor J.T. "has not been threatened," and that his statements were "vague" and "lacked credibility."  This was knowingly false.

## ESCALATING HARM

84. Between March 27 and May 6, 2024, the minor J.T. appeared with visible injuries nearly every week while in the custody of Katie Hartsell. the minor J.T. disclosed assaults to police, the Plaintiff, and to visitation monitors.

85. On March 27, 2024, a Zoom screenshot captured the minor J.T. with facial swelling does not present on March 26. On March 30, 2024, Ellen Greek observed bruising around the minor J.T.'s right eye,

86. On April 1, 2024, the minor J.T. disclosed to Glendale Police that Katie Hartsell punched him in the eye while on a trip to New York. The minor J.T. stated clearly that he was hit with a clenched fist, and he expressed fear of being hit again. The minor J.T. in New York was another occurrence of the minor J.T. being removed from the state without knowledge.

87. On April 1, 2024, Katie Hartsell told officers, "All I can hope is that this visit, which will mean DCFS is coming, will be the final straw for the judge and he'll say, 'Your rights are terminated.'"

88. On April 1, 2024, following a police interview concerning further abuse allegations by Julian personally against Katie Hartsell, Thomas Plummer is captured on home surveillance footage coaching the minor J.T. to fabricate allegations against Michael Tatum .The footage confirms shows Thomas Plummer actively coaching the minor J.T. to lie and state on video that Michael Tatum forced him to say Katie Hartsell punched him in the eye, and coached the minor J,T. to say that Michael Tatum threatened to harm the minor J.T. if he did not do it.

89. On April 6, 2024, Ellen Greek again documented new bruising under Julian's right eye.

90. On April 10, 2024, during a Zoom call with the Plaintiff, the minor J.T. showed new injuries and nodded affirmatively when asked if his mother had harmed him.

91. On April 17, 2024, and April 23, 2024, the minor J.T appeared with fresh visible injuries each time.

92. On May 5, 2024, the minor J.T. appeared with visible injuries and disclosed again that Katie Hartsell punched him in the eye and that Tom Plummer slapped him. The minor J.T. reported being struck without provocation.

93. On May 6, Glendale Police conducted another interview with the minor J.T. repeated the same allegations. the minor J.T. confirmed he was punched with a closed fist, struck across the face, and expressed fear about returning to Katie Hartsell.

94. Forensic medical findings submitted by Dr. Elizabeth Bellino, M.D., a Level II pediatric trauma specialist, confirm that the bruising patterns observed on minor J.T. are

consistent with blunt-force trauma, including repeated impacts concentrated around the eye, forehead, nose, and lips. These injuries were documented between December 2022 and October 2024 and are incompatible with accidental or low-impact childhood injuries.

95. Renee Martinez, acting under color of state law as a DCFS social worker, knowingly falsified and suppressed material abuse evidence, including photographs, recorded statements, and direct communication that J.T. displayed fresh and visible facial injuries and had disclosed that Katie Hartsell and Thomas Plummer had physically harmed him.

PRE-DETERMINED JUDICIAL OUTCOME

96. On May 6, 2024, during a recorded interview with Glendale Police Department officers, Katie Hartsell stated on body-worn camera that her attorney, Melanie Shornick, had already communicated with Minor's Counsel, F. Edward Navarro, and that Navarro was "already gonna recommend no contact" for Michael Tatum "even before today's events."

97. On May 6, 2024, Thomas Plummer obstructed an active child abuse investigation conducted by Glendale Police by providing law enforcement with false and materially misleading evidence, including altered photographs of minor J.T., a counterfeit DCFS finding against Michael Tatum, and a fraudulent declaration authored by Steven Moss.

98. On May 8, 2024, in a jurisdictionally void, sham hearing, removed all contact between Michael Tatum and the minor J.T. during an active DCFS investigation without an evidentiary hearing, without sworn testimony, and without adhering to governing statutory laws. The outcome reflected the precise arrangement described by Katie Hartsell on May 6, 2024, confirming a predetermined judicial outcome.

99. On May 8, 2024, Melanie Shornick submitted a fabricated and pre-calculated allegation of substantiated emotional abuse against Plaintiff without any due process by DCFS for the finding. This substantial finding was created by Melanie Shornick, and the false instruments contain her handwriting. The allegation was later reversed after Michael Tatum challenged DCFS, confirming its falsity; however, no correction to the judicial record was issued, and the damage to Michael Tatum's rights and relationship was not remedied.

100. Findings from the April 29, 2024, and May 8, 2024, transcripts show Attorney Melanie Shornick engaged in private communications with Steven Moss, F. Edward Navarro, and Senior Deputy County Counsel Carol Chacón about DCFS "findings" before the hearings. Michael Tatum's counsel (Limor Mojdehiazad) stated on the record she was excluded from those contacts and had not been served with any official notice.

101. On April 29, 2024, Shornick told the court DCFS had "substantiated" emotional abuse against Father and referred him to DOJ for CACI inclusion, attaching an e-mail from County Counsel. Mojdehiazad objected that no notice had been served, and the closure letter made such inclusion impossible.

102. On May 8, 2024, Navarro confirmed on the record that he spoke directly with Chacón, who told him the referral was substantiated against Father and that Father would be placed on CACI "for 100 years" unless he filed a grievance. Navarro also admitted he and Shornick spoke to Dr. Moss without notifying Mojdehiazad, calling it "his mistake."

103. Commissioner Hernandez stated, "based on the findings of DCFS, allegations of emotional abuse were substantiated, the court can take judicial notice of that," and ordered a three-

month suspension of Father's visitation, despite no admissible evidence or service of notice.

104. F. Edward Navarro identified "Ms. Renee Martinez" as the DCFS employee "who made those findings and recommendations,".

105. However, On April 1, 2024, during a recorded conversation between Michael Tatum and Renee Martinez, Renee Martinez stated "So, the thing about it is if the child does not disclose it in our court, then we don't open. He would have to disclose, even no matter what evidence". Further confirmation a counterfeit substantiated finding was orchestrated to further the illegal seizure of the minor J.T.

## RETALIATION AGAINST MICHAEL TATUM USING FORGED PLEADINGS

106. Beginning in March 2025, Plaintiff Michael Patrick Tatum began documenting and disclosing ongoing fraud and constitutional violations occurring in state proceedings involving minor Plaintiff J.T. These disclosures were made in the context of Plaintiff submitting court filings, preserving forensic records, and requesting lawful intervention to protect his child from continued harm.

107. On April 14, 2025, Michael Tatum filed motions in LASC case BD649563 to have both Melanie Shornick and F. Edward Navarro disqualified as material witnesses under California Bar Association's Rules of Professional Conduct 3.7. The motions to disqualify were based on Katie Hartsell's statement on body-worn camera that her attorney, Melanie Shornick, had already communicated with Minor's Counsel, F. Edward Navarro, that Navarro was "already gonna recommend no contact" for Michael Tatum "even before today's events."

108. On April 28, 2025, Plaintiff filed an ex parte application detailing the ongoing harm to minor Plaintiff J.T. and specifically notifying the court of jurisdictional violations, fabricated orders, and evidence of civil rights deprivations under color of law. The filing requested immediate judicial attention due to the ongoing threat to J.T.'s safety.

109. On May 7, 2025, Commissioner Dennis F. Hernandez denied Plaintiff's ex parte application without addressing the documented evidence, declining to hold a hearing or take protective action. In the same order, Hernandez issued, on his own motion, an Order to Show Cause re: vexatious litigant status against Plaintiff, without providing factual findings or legal authority to support the order. This sequence of actions occurred within ten days of Plaintiff's filings exposing alleged judicial misconduct.

110. The May 7, 2025, Order to Show Cause contained no basis in the record and was issued directly following Plaintiff's protected efforts to expose procedural fraud, interference with parental rights, and violations of due process affecting minor Plaintiff J.T.

111. On May 28, 2025, at 8:17 p.m., attorney Melanie Shornick filed a Request for Order seeking to designate Plaintiff as a vexatious litigant, require a security bond as a condition of future filings, and obtain monetary sanctions exceeding $35,000. The filing was made less than 48 hours before a scheduled May 30, 2025, hearing, providing Plaintiff no meaningful opportunity to respond.

112. The May 28, 2025, filing asserted sanctions based on billing records later shown to contain fabricated entries and unsupported hourly rates. These records were submitted without accompanying declarations or admissible evidence, and no evidentiary hearing was sought or scheduled in connection with their submission.

113. The sanctions request was part of a coordinated strategy by Defendants acting under color of law to deter future filings, penalize Plaintiff's efforts to expose systemic court misconduct and prevent Plaintiff from preserving or presenting evidence on behalf of minor Plaintiff J.T.

114. On May 29, 2025, Michael Tatum filed REQUEST FOR EMERGENCY ADMINISTRATIVE STAY TO THE PRESIDING JUDGE OF THE LOS ANGELES SUPERIOR COURT DEPARTMENT 1 of LASC and provided details about Dennis Hernandez's lack of jurisdiction, the unlawful  sua sponte  sanctions filing against Michael Tatum, and the last-minute ex part to deem Michael Tatum a vexatious litigant.

115. On May 30, 2025, Michael Tatum filed "PETITIONER'S FORMAL OBJECTION TO PROCEEDING DUE TO LACK OFJ URISDICTION, PROCEDURAL VIOLATIONS, AND ANTICIPATED PREJUDICE", the basis of Michael Tatum's objection was the LACK OF JURISDICTION UNDER CALIFORNIA CONSTITUTION, ARTICLE VI, § 21 AND CODE OF CIVIL PROCEDURE § 259(d) and Melanie Shornick's sustained, intentional pattern of legal, financial and procedural fraud in violation of both state and federal criminal law.

116. On May 30, 2025, Defendants proceeded with a hearing on the sanctions and vexatious litigant issues despite Plaintiff having submitted a request for stay based on a pending appellate review of jurisdictional violations. During the hearing, no evidentiary hearing occurred, and Plaintiff was not permitted to refute the billing statements or present evidence.

117. At the conclusion of the hearing, the court imposed monetary sanctions of $35,000 against Plaintiff, based solely on the disputed billing statements and without legal findings or statutory grounds supporting the amount. Payment was ordered within 30 days, and failure to comply was tied to future filing restrictions.

118. The sanctions were imposed after Plaintiff's filings revealed fraud on the court, fabricated orders, and deprivation of constitutional rights affecting both Plaintiffs. The sanctions were therefore not judicial penalties, but retaliatory acts designed to suppress Plaintiff's legal advocacy.

119. On June 18, 2025, Melanie Shornick filed an ex parte "Request for Orders – Vacation Travel" on behalf of Katie Hartsell, bearing Katie Hartsell's forged signature, seeking authorization for a three-week itinerary with minor J.T. to St. Louis/Washington, Missouri, then to Houston/Pearland, Texas, and then to Honolulu (Marriott Waikiki), with Southwest flight itineraries attached.

120. On June 20, 2025, A minute order was generated reflecting a jurisdictionally void hearing granting Katie Hartsell out of state travel with the minor J.T.

121. On June 20, 2025, Commissioner Hernandez presided over a hearing and declared Plaintiff a vexatious litigant, prohibiting further filings without prior judicial approval. Plaintiff was not present due to lack of formal service of notice of the hearing.

122. The court record states that "no further notice is required," citing the Minute Order from the May 30, 2025, hearing, despite Plaintiff not having been personally served or provided a hearing in which he could be heard or present evidence.

123. The June 20, 2025, vexatious litigant order contains no written findings, no record of evidentiary support, and no reference to any jurisdictional or statutory authority to impose the designations issued.

124. On June 27, 2025, Michael Tatum, acting as next friend for minor J.T. filed CASE NO. 2:25-CV-05977 in the Los Angeles division of the Central District of California to address

the unlawful seizure of minor J.T. and other constitutional deprivations against the defendants listed within this complaint.

125. On July 9, 2025, Commissioner Dennis F. Hernandez, Attorney Melanie Shornick, and Minor's Counsel F. Edward Navarro proceeded with a hearing despite being named defendants in an active federal civil rights case involving the same subject matter. None of the participants recused themselves or disclosed the conflict of interest. During this jurisdictionally void proceeding, all parental rights to the minor J.T. were transferred to Katie Hartsell, despite the clear disqualification and absence of lawful authority to act.

CASE NO. 2:25-CV-05977

126. On June 27, 2025, Plaintiff filed a verified civil rights complaint in the Central District of California under 42 U.S.C. § 1983, naming Katie Hartsell, Melanie Shornick, F. Edward Navarro, Dennis F. Hernandez, Dr. Steven Moss, Carol Chacon, Christine Ngo, Rene Martinez, Thomas Plummer, Sergio Esparza, Erika Navarro, DCFS, and the Los Angeles County Superior Court as defendants.

127. The 52-page complaint, supported by verified declarations and extensive exhibits, alleged a coordinated conspiracy among judicial officers, county officials, court-appointed attorneys, social workers, and private individuals to deprive Plaintiff and minor J.T. of constitutional rights through forged court documents, illegal custody modifications, suppression of child abuse evidence, and retaliatory proceedings.

128. The complaint documented specific predicate acts including: false jurisdictional authority for Commissioner Hernandez; the fabricated DCFS reports submitted by Melanie Shornick and social worker Christine Ngo on August 2, 2022, that reversed documented abuse

findings; the altered Glendale Police Department records introduced through supplemental

declarations; and the ghostwritten documents bearing Navarro's name but containing Shornick's

unique linguistic signature.

## THE JUDICIAL ASSIGNMENT

129. On July 1, 2025, the court entered Document 6, titled "NOTICE OF ASSIGNMENT

to District Judge Hernan D. Vera and referred to Magistrate Judge Patricia Donahue." This

document purports to assign the case and establish the scope of magistrate judge authority. the

document states that Magistrate Judge Donahue "is authorized to consider preliminary matters

and conduct all further hearings as may be appropriate or necessary" and that "unless the

Magistrate Judge determines that a trial is required, the Magistrate Judge shall prepare and file a

report and recommendation regarding the disposition of this case."

130. The assignment notice misstated the scope of magistrate judge jurisdiction under 28

U.S.C. § 636, it did not state that written consent of all parties is required for a magistrate judge

to conduct dispositive proceedings or enter judgment under 28 U.S.C. § 636(c). No consent to

magistrate jurisdiction was ever sought or obtained from Plaintiff, Yet, the notice improperly

vested primary decisional authority in the magistrate, including authority to determine whether

trial is required, contrary to 28 U.S.C. § 636 and Article III requirements.

## THE TEXT ONLY DENIAL

131. On June 27, 2025, Plaintiffs filed "VERIFIED EX PARTE MOTION FOR

TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY

PRELIMINARY INJUNCTION SHOULD NOT ISSUE filed by Plaintiff Michael Patrick Tatum. (Attachments: # 1 Proposed Order) (sh) (Entered: 07/01/2025)". This motion was seeking to enjoin the unlawful seizure of the minor J.T. and provided details of the out-of-state removal of the minor J.T. within days of federal service.

132. On July 2, 2025, the federal docket reflected a text-only entry: '"TEXT ONLY ENTRY (IN CHAMBERS) ORDER by Judge Hernan D. Vera: The Court has reviewed Plaintiff's Ex Parte Application for a Temporary Restraining Order ("TRO") seeking to enjoin enforcement of custody orders entered in the related state court proceedings 2. Having considered the application, the Court finds that Plaintiff is not entitled to relief. See Peterson v. Babbitt, 708 F.2d 465, 466 (9th Cir. 1983); see also Cilani v. Kwon Ae Young et al., No. 2:16-cv-07470-ODW-(JPRx), 2017 WL 6183234, at *1 (C.D. Cal. Jan. 10, 2017). The Court hereby DENIES the application. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (wm) TEXT ONLY ENTRY (Entered: 07/02/2025)"

133. The July 2, 2025, text-only format did not comply with Rule 58(a), which mandates that "every judgment and amended judgment must be set out in a separate document. More critically, the text-only entry bore no judicial signature, provided no authentication under 28 U.S.C. § 753(b), and contained no indication that it originated from Judge Vera through legitimate chambers process. The text only entry provided no factual findings, no analysis of the emergency circumstances documented in the verified motion, and no separate document complying with Federal Rule of Civil Procedure 58.

134. On July 3, 2025, just as the details provided within the motion, the minor J.T. was flown out of state jurisdiction and no communication and all communication between Petitioners has been halted and obstructed since.

## THE DOCKET MANIPULATION

135. On July 21, 2025, Plaintiffs simultaneously filed a First Amended Verified Complaint, and "PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISQUALIFY DISTRICT JUDGE PURSUANT TO 28 U.S.C. §§ 455(a), (b)(1), AND (c)" based on Judge Vera's prior employment as a dependency court judge of the Los Angeles County Superior Court. Bothe Los Angeles County Superior Court and Los Angeles County Department of Children Family Services were defendants in the case.

136. On August 6, 2025, Plaintiffs filed the: "Verified MOTION for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction to Enjoin a Continuing State-Enabled Child Abduction Carried Out Under Color of State Law". On August 13, 2025, Katie Hartsell and Thomas Plummer's motions to dismiss was entered in the docket but reflected an August 7, 2025, filing date and were numbered 43 and 44. The motions were entered after Plaintiff's default request despite bearing earlier filing dates. These motions were set for hearing on August 12 and September 12, 2025, respectively.

137. On August 13, 2025, the clerk issued Document 45 denying Plaintiff's default request on grounds that "Motions to Dismiss are on file.", seven minutes after the docket entries of Katie Hartsell and Tom Plummers's motions to dismiss, and 18 minutes after Plaintiff's request for notice of default.

## THE DISMISSAL WITHOUT JURISDICTION

138. On August 15, 2025, without adjudicating the motion for disqualification or the temporary restraining order motion to enjoin the unlawful seizure of the minor J, T. Under color of law, the court issued Document 46, styled as "minute order (in chambers) order dismissing first amended complaint without leave to amend and dismissing action without prejudice." This order dismissed the entire action under Younger v. Harris, 401 U.S. 37 (1971), based on purported abstention grounds.

139. The August 15, 2025, order mischaracterized Plaintiffs claims throughout the order, reflecting a narrative foreign to the verified complaint.

140. Vera stated: "Beginning in July 2022, Defendants 'initiated an unlawful campaign to dismantle' Plaintiff's physical and legal custody of J.T., through 'forged court documents, illegal custody modifications, suppression of child abuse evidence, and retaliatory proceedings against the protective parent.'"

141. The Complaint states: "The violations began in July 2022, following the arrest of Defendant Katie Denise Hartsell for domestic violence and the issuance of protective orders awarding Plaintiff sole physical and legal custody of J.T. Within days, Defendants initiated an unlawful campaign to dismantle those protections through forged court documents, illegal custody modifications, suppression of child abuse evidence, and retaliatory proceedings against the protective parent."

142. Vera stated: "Plaintiff does not 'seek review, reversal, or modification of any final state-court judgment. Rather, this action challenges the ongoing enforcement of void and constitutionally infirm orders that were entered without jurisdiction, notice, or lawful findings, and which are being used to deprive Plaintiffs of federally protected rights.'"

143. The Complaint states: "Plaintiffs do not seek review, reversal, or modification of any final state-court judgment. Rather, this action challenges the ongoing enforcement of void and constitutionally infirm orders that were entered without jurisdiction, notice, or lawful findings, and which are being used to deprive Plaintiffs of federally protected rights. Because the relief sought is prospective and directed at continuing violations of federal law by state officials acting under color of state law, this action falls squarely within the Ex parte Young doctrine. See Skinner v. Switzer, 562 U.S. 521, 532 (2011); Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004).

144. Vera stated: "On July 15, 2022, J.T.'s mother was arrested after assaulting Plaintiff."

145. The Complaint states: "On July 15, 2022, Defendant Katie Denise Hartsell, acting in concert with state officials and as part of a pattern of coordinated abuse, forcibly entered Plaintiff Michael Patrick Tatum's residence in Los Angeles County and physically assaulted him in the presence of their minor son, J.T., resulting in her arrest by the Los Angeles Police Department. This event constituted the triggering incident for the conspiracy among state actors and private individuals, whose subsequent coordinated acts under color of state law violated Plaintiffs' rights to familial association and personal security under the Fourteenth Amendment."

146. Vera stated: "On July 19, 2022, Plaintiff obtained a domestic violence restraining order ("DVRO") and was awarded sole and legal physical custody of J.T."

147. The Complaint states: "On July 19, 2022, Plaintiff Michael Patrick Tatum filed a post-judgment application for a Domestic Violence Restraining Order in Los Angeles Superior Court, seeking emergency protection for himself and his minor son J.T. in response to Defendant Hartsell's violent assault. The court granted the application, issued a Temporary Restraining Order (TRO), and awarded sole legal and physical custody of J.T. to Plaintiff, with no visitation

to Hartsell. These lawful protections were subsequently dismantled without legal process in

retaliation, resulting in a deprivation of Plaintiffs' rights to due process and custodial integrity

under the Fourteenth Amendment."

148. Vera stated: "Soon thereafter, however, 'every ruling issued by the assigned judicial

officer has been averse to Plaintiff, . . . regardless of the nature or strength of the evidence

submitted.' Id. ¶ 53."

149. The Complaint states: "Since the inception of the conspiracy in or around July 2022,

every ruling issued by the assigned judicial officer has been averse to Plaintiff Michael Patrick

Tatum, regardless of the nature or strength of the evidence submitted. Plaintiff has presented

extensive documentary records, witness statements, and physical evidence of abuse, misconduct,

and fraud, none of which have resulted in a single favorable finding. This 100% pattern of

adverse outcomes, over an extended period, constitutes a statistical impossibility in neutral

judicial proceedings and evidence of predetermined rulings, issued in violation of Plaintiffs'

right to due process under the Fourteenth Amendment."

150. Vera stated: "On July 22, 2022, a commissioner conducted a 'non-appearance case

review,' resulting in the removal of J.T. from the scope of the DVRO, altering custody 'from

sole to 50/50,' issuing a 'counter-DVRO' in favor of J.T.'s mother, and 'creating dual protective

orders with no legal basis or supporting record.'"

151. The Complaint states: "On July 22, 2022, without providing Plaintiff notice or an

opportunity to be heard, and outside the presence of any parties or counsel, Defendant

Commissioner Dennis F. Hernandez, acting under color of state law in his official capacity as a

judicial officer of the Los Angeles Superior Court, conducted a non-appearance case review and

issued orders: (a) removing J.T. from the protective scope of the DVRO; (b) altering custody from sole to 50/50; (c) issuing a counter-DVRO in favor of Hartsell; and (d) creating dual protective orders with no legal basis or supporting record. These actions, taken without pleadings, findings, or a hearing, constituted a deliberate deprivation of Plaintiffs' due process rights under the Fourteenth Amendment."

152. Vera stated: "On August 9, 2022, the Commissioner issued custody modifications and protective order reversals without legal authority."

153. The Complaint states: "From August 9, 2022, forward, Defendant Hernandez continued to issue orders against Plaintiff and J.T., including custody modifications and protective order reversals, while knowing that he lacked any legal authority to do so. These actions were taken in concert with Defendants Melanie Shornick, F. Edward Navarro, and court clerks including Sergio Esparza, and were designed to fabricate the appearance of lawful proceedings, further the retaliatory conspiracy, and deprive both Plaintiffs of constitutional protections under color of state law."

154. Vera stated: "On January 5, 2023, the Commissioner issued a custody ruling against Plaintiff after disregarding extensive evidence of abuse and crediting falsified social worker reports."

155. The Complaint states: "On January 5, 2023, Defendant Commissioner Dennis F. Hernandez issued a custody ruling against Plaintiff Michael Patrick Tatum after disregarding extensive evidence of abuse and instead crediting falsified DCFS reports submitted by Defendant Melanie Shornick. The ruling falsely stated that no evidence of abuse existed, overriding all prior protective findings and resulting in the immediate removal of safeguards that had protected

minor Plaintiff J.T., in violation of Plaintiffs' Fourteenth Amendment rights to due process and family integrity."

156. Vera stated: "On May 8, 2024, the Los Angeles Superior Court suspended Plaintiff's visitation, upon the recommendation of J.T.'s counsel."

157. The Complaint states: "Two days later, on May 8, 2024, the Los Angeles County Superior Court suspended Plaintiff Michael Patrick Tatum's visitation based on the recommendation of Minor's Counsel, as reflected in the court's Minute Order. The ruling was issued without an evidentiary hearing, without sworn testimony addressing the alleged abuse incident, and without allowing Plaintiff to respond to the recommendation. The custody outcome reflected the precise arrangement described by Defendant Hartsell on May 6, 2024, confirming that the proceeding was predetermined and that Defendants acted under color of state law to impose an unlawful and retaliatory custody restriction in violation of the Fourteenth Amendment."

158. Vera stated: "On May 7, 2025, the Commissioner denied Plaintiff's ex parte application for emergency relief and issued an order to show cause to declare Plaintiff a vexatious litigant. Id. ¶ 81. On June 20, 2025, the Commissioner declared Plaintiff a vexatious litigant. Id. ¶ 84."

159. The Complaint states: "Beginning in March 2025, Plaintiff Michael Patrick Tatum began documenting and exposing systemic fraud and constitutional violations within ongoing proceedings involving minor Plaintiff J.T. Defendants, acting under color of state law, escalated a pattern of retaliatory conduct intended to suppress his speech and punish him for seeking legal protection. On April 28, 2025, Plaintiff submitted an ex parte application detailing the fraud and

requesting emergency relief due to continuing harm to J.T. On May 7, 2025, Defendant Commissioner Dennis F. Hernandez denied the application without addressing the merits and, on his own motion, issued an Order to Show Cause to declare Plaintiff a vexatious litigant. That order was issued without supporting findings and constituted a retaliatory act for Plaintiff's protected efforts to expose judicial misconduct and pursue civil rights remedies.

160. On June 20, 2025, Defendant Commissioner Dennis F. Hernandez, acting under color of state law and in coordination with Defendants Melanie Shornick and F. Edward Navarro, presided over a hearing and formally declared Plaintiff Michael Patrick Tatum a vexatious litigant. The designation prohibited Plaintiff from filing further motions or pleadings without judicial pre-approval, effectively silencing his access to legal redress. The order was entered without evidentiary hearing and in Plaintiff's absence, despite no valid service of notice. The record misleadingly states that Plaintiff was properly served, yet the Minute Order from May 30, 2025, expressly states: 'The Court makes its orders in open court, no further notice is required.' This designation was not an impartial adjudication, but the culmination of a retaliatory strategy executed by Defendants to suppress Plaintiff's legal advocacy, restrict his filings, and obstruct his ability to expose ongoing constitutional violations or protect minor Plaintiff J.T. These acts constitute a continuing violation of Plaintiffs' rights under the First and Fourteenth Amendment."

161. Vera stated: "Plaintiff seeks '[e]mergency intervention by the federal court' because 'Defendants' continued operation of this criminal enterprise within official state structures poses an imminent threat to Plaintiffs' physical safety, legal standing, and parental relationship, and warrants immediate issuance of temporary restraining orders, preliminary injunctions, and equal relief to preserve Plaintiffs' rights under federal law.' Id. ¶ 94."

162. The Complaint states: "Emergency intervention by the federal court is the only effective mechanism to halt the ongoing deprivation of constitutional rights and prevent further harm to both Plaintiffs. Defendants' continued operation of this criminal enterprise within official state structures poses an imminent threat to Plaintiffs' physical safety, legal standing, and parental relationship, and warrants immediate issuance of temporary restraining orders, preliminary injunctions, and equitable relief to preserve Plaintiffs' rights under federal law."

163. Vera stated: "Plaintiff seeks sweeping relief that includes enjoining the enforcement of all orders entered by the state court after July 19, 2022, when he was awarded sole custody. Id. ¶¶ 157–66."

164. The Complaint states: "Plaintiffs seek declaratory relief voiding all custody orders issued after July 19, 2022, based on lack of jurisdiction and procurement through fraud and procedural violations. Plaintiffs also seek a preliminary and permanent injunction restoring Plaintiff Michael Patrick Tatum's prior legal and physical custody rights, halting enforcement of all subsequent orders, removing Defendants Moss, Navarro, and Shornick from authority over J.T., and suspending all state proceedings pending federal review. In addition, Plaintiffs request compensatory damages of no less than $500,000 for Plaintiff Tatum, compensatory damages for minor Plaintiff J.T., punitive damages against individual Defendants, and attorneys' fees and costs under 42 U.S.C. § 1988 and 18 U.S.C. § 1964(c), along with any further relief necessary to protect Plaintiffs' constitutional rights and ensure accountability."

165. Judge Vera asserted that "the proceedings in the state court are 'ongoing,' as Plaintiff admits." The Complaint contains no admission that state court proceedings are ongoing, the Complaint characterizes the controversy as the ongoing enforcement of void and constitutionally infirm orders entered without jurisdiction, notice, or lawful findings.

166. The August 15, 2025, ruling did not provide a separate document compliant with Federal Rule of Civil Procedure 58(a) and bore no judicial signature or authentication. The absence of a separate judgment document prevented the running of any appeal period under Bankers Trust Co. v. Mallis, 435 U.S. 381 (1978), and United States v. Indrelunas, 411 U.S. 216 (1973).

167. The August 15, 2025, dismissal order includes the notation "Case Terminated" and changed the case status to closed. Under Federal Rule of Civil Procedure 60(b), post-judgment motions may be filed in a closed case, but any substantive ruling on such motions requires that the case first be reopened through a separate administrative order. The docket reveals that this fundamental requirement was systematically violated.

168. The August 15, 2022, seems to be primarily plagiarized from the 2011 order; Young vs. Schwarzenegger, Case No. C-10-03594-DMR:

## ORDERS IN A CLOSED CASE

169. On August 16, 2025, Plaintiff filed a motion for reconsideration under Rules 59(e) and 60(b), Document 47, and a motion set for hearing on September 22, 2025, was set accordingly.

170. The motion sought reconsideration under Rule 59(e) or Rule 60(b), including void judgment relief under Rule 60(b)(4) invoking Rule 60(b)(6) for extraordinary circumstances, relying on Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988).

171. The motion argues that the dismissal order is void because the court failed to rule on the pending disqualification motion under 28 U.S.C. § 144 before issuing substantive rulings. It cites Sibla v. United States, 624 F.2d 864 (9th Cir. 1980) for the proposition that a judge has no

authority to proceed until recusal issues are resolved. It states that all rulings made while a recusal motion is pending are jurisdictionally invalid. The motion asserts that no qualifying ongoing state proceedings exist under Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013).  It contends that even if Younger applied, exceptions for bad faith, harassment, or extraordinary circumstances were ignored. The motion politely states the court misused Johns v. County of San Diego, 114 F.3d 874 (9th Cir. 1997) to block claims that were not brought on behalf of the minor. The court failed to follow the Ninth Circuit rule in Gilbertson v. Albright, 381 F.3d 965 (9th Cir. 2004), which requires a stay rather than dismissal of § 1983 claims for damages.

172. On August 26, 2025, the court issued Document 52, styled as "MINUTES (IN CHAMBERS) ORDER DENYING MOTION FOR RECONSIDERATION." This order was issued while the case remained in closed/terminated status, without any intervening order reopening the case. The docket contains no entry between the August 15 closure and the August 26 ruling that would restore the case to active status.

173. What was used to justify the reasoning of the order were reworded and fabricated facts, Judge Vera stated Plaintiff's motion raises four grounds for relief. The Court addresses each in turn below. As a preliminary matter, however, the Court finds that Plaintiff fails to meet the standards under Rules 59(e) and 60(b). The Motion does not proffer any newly discovered evidence; it does not posit any mistake, surprise, or excusable neglect; nor does it identify any new facts or change in the law.

174. Plaintiff first argues that the Court erred by dismissing this action without ruling on his motion for recusal. Motion at 5–6. However, when a motion for recusal is filed, "[o]nly after the legal sufficiency of the affidavit is determined does it become the duty of the judge to

proceed no further' in the case." United States v. Azhocar, 581 F.2d 735, 738 (9th Cir. 1978).
Here, the motion for recusal was legally insufficient on its face because it merely cited the
district judge's prior experience as a judge of the Los Angeles County Superior Court. [Dkt. 22].

175. Judge Vera stated a judge's prior professional experience is a legally insufficient
ground for recusal. See Love v. Macomber, 2023 WL 3380673, at *2 (E.D. Cal. May 11, 2023)
(Judge's prior employment is insufficient basis for recusal) (citing cases). Thus, the Court's
failure to rule on Plaintiff's legally insufficient motion for recusal, prior to dismissal, does not
warrant the reopening of this case. See Mayes v. Leipziger, 729 F.2d 605, 607 n.1 (9th Cir. 1984)
(no reversible error from a Judge's failure to rule on a recusal motion that was legally
insufficient before dismissing the case)"[t]o maintain that . . . [the] state . . . action is weak,
meritless, or even unconstitutional, as [Plaintiff] does, is largely to reprise the presumption that if
[Plaintiff's arguments] have merit, they may be raised and vindicated in state court." Plaintiff
sought damages because Defendants including state court employees, attorneys, and the state
court itself—allegedly operated a "criminal enterprise within official state structures" and
engaged in "fraudulent pleadings, void jurisdictional rulings, and conspiracy to manipulate
proceedings through unlawful means." Plaintiff's request for damages, which improperly sought
damages for a child whom Plaintiff had no authority to represent as a pro se litigant, and which
were based on frivolous allegations of a "criminal enterprise" in a state family court, was
insufficient to warrant a stay rather than dismissal. See Mapp v. Santos, 2018 WL 3155889, at *4
(S.D. Cal. June 28, 2018) (unsupported claims for damages did not warrant stay pursuant to
Younger). The factual basis to Plaintiff's claims and arguments were based on Judge Vera's prior
employment as a dependency court judge of the Los Angeles County Superior Court. Bothe Los

Angeles County Superior Court and Los Angeles County Department of Children Family Services were defendants in the case.

176. Plaintiffs never stated that the state action is weak, meritless, and unconstitutional as claimed, the factual allegation of reference by Plaintiff's stated "Emergency intervention by the federal court is the only effective mechanism to halt the ongoing deprivation of constitutional rights and prevent further harm to both Plaintiffs. Defendants' continued operation of this criminal enterprise within official state structures poses an imminent threat to Plaintiffs' physical safety, legal standing, and parental relationship, and warrants immediate issuance of temporary restraining orders, preliminary injunctions, and equitable relief to preserve Plaintiffs' rights under federal law.".

177. Judge Vera's statement explaining the reasoning damages were sought by the Plaintiff's was another rewritten narrative, what was factually claimed was "Michael Patrick Tatum has incurred over $500,000 in legal fees, filings, expert consultations, administrative charges, and court-imposed sanctions. These expenses were forced upon him as a direct result of Defendants' fraudulent pleadings, void jurisdictional rulings, and conspiracy to manipulate custody proceedings through unlawful means."

178. Additionally, the August 26, 2025, ruling did not provide a separate document compliant with Federal Rule of Civil Procedure 58(a) and bore no judicial signature or authentication. The absence of a separate judgment document prevented the running of any appeal period under Bankers Trust Co. v. Mallis, 435 U.S. 381 (1978), and United States v. Indrelunas, 411 U.S. 216 (1973).

## A COMPROMISED JUDICIARY

179. On October 21, 2025 Plaintiffs filed: "Verified Emergency Motion For Temporary Restraining Order and Order To Show Cause re; preliminary Injunction To Enjoin fraudulent Federal Authority And The Ongoing Kidnapping And illegal Seizure Of A Minor Under color Of Law which was filed to address fraud on the court and the ongoing unlawful seizure of the minor J.T.

180. On October 22, 2025, the court denied Plaintiff's emergency motion for temporary restraining order stating Plaintiff, on behalf of himself and his minor son, filed a Civil Rights Complaint on June 27, 2025. [Dkt. 1]. Plaintiff filed a motion for a temporary restraining order at the same time, which the Court denied. [Dkts. 2, 9]. Plaintiff filed another motion for a temporary restraining order on August 6, 2025. [Dkt. 41]. On August 15, 2025, the Court sua sponte dismissed the Complaint under Younger v. Harris, 401 U.S. 37 (1971) without leave to amend and closed the case. [Dkt. 46]. The Court denied Plaintiff's request for reconsideration of the dismissal. [Dkt.52]. On October 21, 2025, Plaintiff filed another motion for a temporary restraining order. [Dkt. 56]. The Court has reviewed the motion and finds that it raises the same issues and seeks the same relief as previous motions in this closed case. For that reason, the present motion is denied. The case remains closed.

181. This order confirms the court's awareness that it was issuing substantive rulings in a closed case, a jurisdictional impossibility. It states Plaintiffs file a motion for a temporary restring order on August 6, 2025, a motion the court never adjudicated. The order mischaracterizes the context of the motion by stating it raises the same issues and once again, did not provide a separate document compliant with Federal Rule of Civil Procedure 58(a), and bore no judicial signature or authentication.The absence of a separate judgment document prevented the running of any appeal period under Bankers Trust Co. v. Mallis, 435 U.S. 381 (1978), and

United States v. Indrelunas, 411 U.S. 216 (1973). Making that a total of four dispositive rulings that fail to comply with Rule 58 of the FRCP

## IMMINENT AND IRREPARABLE CONSTITUTIONAL INJURY

182. Federal courts have long recognized that unlawful interference with a parent-child relationship, particularly where the child faces documented risk of physical or psychological harm, constitutes per se irreparable injury under the Fourteenth Amendment. In the present case, minor Plaintiff J.T. remains subject to a series of void custody orders issued without jurisdiction, under fabricated authority, and enforced by Defendants acting under color of state law. These orders exclude Plaintiff Michael Patrick Tatum from any contact with his son and were issued without notice, hearing, or valid stipulation, in violation of well-established procedural and substantive due process protections.

183. Minor Plaintiff J.T. has made repeated disclosures of physical abuse and threats by Defendant Katie Denise Hartsell and Thomas Ray Plummer, which have been documented in sworn declarations, body-worn police camera footage, therapist communications, and forensic medical findings. These include reports of bruising to the face, pain while urinating, emotional distress, and direct fear of retaliation. Despite these disclosures, state actors acting under color of law—including Defendants Christine Ngo, Renee Martinez, Steven Moss, and others—have suppressed mandatory reports, altered agency documentation, and denied Plaintiff access to lawful protective hearings, thereby compounding the danger and violating Plaintiffs' rights under the Fourteenth Amendment.

184. J.T. remains physically located in the care of a parent previously arrested for domestic violence, identified by forensic experts as the likely source of non-accidental trauma,

and shielded from legal accountability by void orders manufactured through procedural fraud. This constitutes an immediate and ongoing threat to J.T.'s safety and personal security. Each additional day in this environment exposes J.T. to further injury and Plaintiff to permanent deprivation of his custodial relationship, resulting in irreparable constitutional harm.

185. J.T.'s protected speech regarding abuse has been repeatedly discredited and silenced by state actors acting in coordination, including using "coaching" narratives, ghostwritten therapy summaries, and therapeutic suppression. These actions, taken by Defendants Moss, Navarro, and Shornick under color of state law, constitute viewpoint discrimination and retaliation against a minor witness to abuse, and have been used to justify the continued deprivation of custody in violation of the First and Fourteenth Amendments.

186. J.T. has exhibited documented educational regression, behavioral withdrawal, and trauma-linked anxiety patterns, including increased distress tied to days associated with visitation or court-ordered therapy. These symptoms are consistent with pediatric trauma and form part of the irreparable injury to his psychological and developmental stability. Neither monetary compensation nor retrospective judicial correction can redress these harms.

187. Defendants have engaged in repeated efforts to remove J.T. from the jurisdiction of California, including plans to relocate him for extended periods without court authorization or Plaintiff's consent. On June 17, 2025, Defendant Shornick, acting under color of law and in coordination with Defendant Navarro, confirmed a plan to remove J.T. from the state for a three-week period despite the absence of lawful authority or stipulated order.

188. Plaintiff further faces retaliatory litigation tactics including sanctions motions, vexatious litigant proceedings, and procedural gagging efforts. These acts are based on void custody orders now challenged in this action and are designed to prevent Plaintiff from securing

relief through lawful process. The chilling effect on Plaintiff's ability to protect his child constitutes irreparable harm to First Amendment petitioning rights and Fourteenth Amendment access to courts.

189. In addition to physical and constitutional injuries, Plaintiffs face imminent risk of evidence destruction. The same parties now seeking to relocate J.T. have previously fabricated DCFS reports, suppressed forensic findings, and submitted ghostwritten declarations into the record. Without immediate injunctive relief, critical medical, agency, and testimonial records risk deletion, alteration, or procedural laundering, thereby depriving Plaintiffs of the ability to prove abuse and obtain redress.

190. Taken together, the physical endangerment, custodial separation, suppression of speech, procedural retaliation, and imminent destruction of critical records constitute an extraordinary and ongoing deprivation of Plaintiffs' constitutional rights. These injuries cannot be compensated through damages and require immediate equitable relief to preserve Plaintiffs' rights under the First and Fourteenth Amendments.

THE JULY 19, 2022, ORDER REMAINS THE SOLE VALID AND ENFORCEABLE ORDER

191. The operative custody order in this matter was issued on July 19, 2022, by the Los Angeles County Superior Court, granting Plaintiff Michael Patrick Tatum sole legal and physical custody of minor Plaintiff J.T. and denying Defendant Katie Denise Hartsell visitation. This order was entered under proper subject matter jurisdiction and in compliance with California Code §§ 3020, 3022, and 3040, following the issuance of a Domestic Violence Restraining Order. It remains the only lawfully entered custody order in the case.

192. Under California Code § 6340(a), custody and visitation orders issued in connection with a protective order remain in effect even after the expiration of the restraining order itself, unless and until lawfully modified. No such lawful modification has ever occurred. No FL-300 request for order, FL-320 response, or FL-340/341 modification order has been properly filed, served, or ruled upon. No evidentiary hearing compliant with Family Code § 3011 has been held, and no valid Findings and Order After Hearing has been entered under the required procedures.

193. Jurisdiction to modify the July 19, 2022, order has never vested. No valid stipulation was executed under California Constitution Article VI, § 21, or Code of Civil Procedure § 259(d). Hearings conducted without a properly stipulated judicial officer, without a lawful motion, or without notice and service under Family Code §§ 215 and 6345, are void as a matter of law. The resulting orders carry no legal force or effect.

194. Every attempt to alter the July 19, 2022, custody order has been undertaken through fabricated stipulations, false filings, ghostwritten declarations, and procedurally void hearings. Because these successor acts lacked jurisdiction, they are void ab initio. A void order has no legal effect and cannot serve as the basis for further custody rulings or enforcement.

195. Once jurisdiction is forfeited through fraud, disqualification, or structural due process violations, it cannot be revived by waiver, consent, or the passage of time. Every post–July 19, 2022, hearing was structurally defective. The court was divested of lawful authority, and each attempt to issue custody-related orders thereafter was ultra vires and constitutionally void.

196. The July 19, 2022, custody order therefore remains the sole valid and enforceable order in this case. No lawful chain of jurisdiction exists between that order and any subsequent ruling. All attempts to supersede it are legally null and constitutionally invalid. As a matter of

jurisdictional finality and federal supremacy, it remains operative until lawfully modified, which has never occurred.

## THE JULY 19, 2022, CUSTODY ORDER IS UNMODIFIABLE DUE TO JURISDICTIONAL OUSTER AND VOID SUCCESSOR RULINGS

197. The authority of a court to modify custody is strictly limited to lawful exercises of jurisdiction. That authority terminates when the procedural prerequisites to modify custody— statutory motion, proper service, full hearing, and valid judicial assignment—are absent or structurally defective. Once jurisdiction is lost, it cannot be revived through waiver, stipulation, or elapsed time. Jurisdictional defects are not procedural technicalities; they are fatal to the legitimacy of any resulting order.

198. In this case, each purported successor order issued after July 19, 2022, was premised on judicial disqualification, forged or unsigned stipulations, absent motions, and fabricated records. No legally operative FL-300 was filed. No valid FL-340 or FL-341 was adjudicated. No evidentiary hearing was held under California Code § 3011. No Findings and Order After Hearing were lawfully entered. Instead, judicial authority was exercised in the complete absence of jurisdiction, often in secret proceedings, without notice, record, or adversarial process. These acts were not merely erroneous; they were ultra vires, and therefore void.

199. Orders entered under void conditions—where there is no subject matter jurisdiction, no personal jurisdiction, no proper judicial officer, or no statutory foundation—have no legal force or effect. They are nullities. They cannot create custody, take custody, or transfer custody. The doctrine is settled: successor orders that emerge from void proceedings are themselves void. The fruit of the void is void.

200. Custody, once lawfully fixed, cannot be disturbed by orders that are procedurally fraudulent, jurisdictionally defective, or constitutionally infirm. A court that has forfeited its authority through structural violations of due process cannot later restore that authority by invoking the unlawful orders it created. The jurisdictional chain is broken. The legal status becomes locked, not because of procedural finality, but because every attempt to disturb it has been constitutionally defective and legally null.

201. The July 19, 2022, custody order is thus not only the last valid custody order—it is the only custody order. It remains operative by law, not by argument. All subsequent attempts to alter that order—whether by stipulation, hearing, or minute entry—have failed as a matter of jurisdiction and due process. The record is unambiguous. The law is controlling. The custody order stands, and it cannot be modified by void instruments, fabricated findings, or color-of-law maneuvering. There is nothing left to modify. The order is sovereign.

### First Claim - Claim for Fourth Amendment—Unreasonable Seizure of Person
### (Against All Individual Defendants)

202. In this case, Plaintiffs allege all individual Defendants deprived Plaintiff J.T. of his rights under the Fourth Amendment. This claim is based not only on the initial unlawful seizure of J.T. on July 22, 2022, but also on the ongoing and continuous seizure of his person, which was effectuated, maintained, and perpetuated by the concerted actions of all individual defendants, each of whom played an integral role in using the machinery of the state to wrongfully deprive him of his liberty.

203. Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person. To prove the defendants deprived the plaintiff of this Fourth

Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

204. First, the defendants seized the plaintiff's person. A defendant "seizes" a person by restraining their liberty through coercion, physical force, or a show of authority. This seizure occurred in two phases: the initial act and the continuous maintenance of that unlawful state.

- The Initial Seizure: On July 22, 2022, Defendants Hartsell and Shornick initiated the seizure by restraining the liberty of minor Plaintiff J.T. through a deliberate show of authority. Defendant Shornick, acting on behalf of Hartsell, served a counterfeit and forged TRO on Michael Tatum, falsely asserting it had legal authority. Her coercive manner and final threat, "You will be deemed to have violated the TRO if Julian is not delivered to Katie's care," compelled compliance under threat of manufactured legal peril, effectively restraining J.T.'s liberty and effectuating his physical seizure.

- The Continuous Seizure: The seizure did not end on July 22. It was unlawfully maintained and perpetuated by the concerted actions of the other defendants. This continuous restraint of J.T.'s liberty was accomplished by:

- Defendant Hernandez, who repeatedly issued jurisdictionally void orders that gave the ongoing physical separation the false color of law, thereby using state power to continuously enforce the seizure.

- Defendants Moss, Ngo, Martinez, and Navarro, who fabricated and suppressed evidence to create the fraudulent pretext necessary for Defendant Hernandez to justify the continued restraint of J.T.'s liberty and prevent his return to his lawful guardian.

- The remaining Defendants, who participated in the conspiracy to obstruct justice and conceal the truth, ensuring that the unlawful seizure would not be terminated.

205. Second, in seizing the plaintiff's person, the defendants acted intentionally. A person acts "intentionally" with a conscious objective to engage in particular conduct. Each defendant acted with the conscious objective to either initiate or perpetuate the unlawful restraint of J.T.'s liberty.

- The initial intent of Hartsell and Shornick is proven by their deliberate plan to create and use a fraudulent TRO to regain custody, as confirmed by forensic metadata and Hartsell's own testimony. Their objective was precisely to terminate J.T.'s freedom of movement from his lawful guardian through means they intentionally applied.

- The subsequent defendants acted with the intentional objective of maintaining that seizure. Defendant Hernandez intentionally issued void orders; Defendants Moss, Ngo, Martinez, and Navarro intentionally fabricated and suppressed evidence. They knew their actions would directly result in J.T. remaining separated from his father, and they acted with the conscious objective to achieve that result.

206. Third, the seizure was unreasonable. The seizure of J.T., from its inception to its continuation, was unreasonable per se.

- The initial seizure was unreasonable because it was executed without a warrant, without probable cause, and in direct violation of the valid and controlling court order of July 19, 2022. It was based on a forged legal fiction.

- The ongoing seizure remained unreasonable at every moment because its continuation was predicated on a series of jurisdictionally void orders, sham proceedings, and fabricated evidence. At no point was the restraint of J.T.'s liberty supported by any lawful judicial authorization. A seizure predicated on fraud and maintained through a corrupt and void legal process is inherently unreasonable and represents a profound and continuing violation of the Fourth Amendment.

Second Claim - Claim for Interference with Parent/Child Relationship — Fourteenth
Amendment Due Process
(Against All Individual Defendants)

207. Plaintiffs Michael Patrick Tatum and minor J.T. possess a constitutionally protected liberty interest in the companionship, society, and integrity of their parent-child relationship, which is rooted in the Fourteenth Amendment to the United States Constitution. State interference with this liberty interest gives rise to a claim under 42 U.S.C. § 1983. The coordinated actions of the Defendants, acting under color of state law, unlawfully interfered with and deprived Plaintiffs of this fundamental right through violations of both procedural and substantive due process.

I. Violation of Procedural Due Process

208. A procedural due process violation arises when the state interferes with the parent-child relationship without providing "fundamentally fair procedures." The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law, which at a minimum requires notice, an opportunity to be heard before a neutral arbiter, and adherence to jurisdictional and statutory mandates.

209. The Defendants violated Plaintiffs' procedural due process rights in the following ways:

210. Separation Without a Valid Court Order: On July 22, 2022, Defendants separated minor Plaintiff J.T. from his father, Plaintiff Michael Tatum, without any valid court order. The seizure was effectuated using a fraudulent and counterfeit temporary restraining order that Defendants knew had not been lawfully filed, signed, or entered. This act occurred in direct defiance of the valid, existing judicial order of July 19, 2022, which had granted Michael Tatum sole legal and physical custody.

211. Systematic Denial of Fundamentally Fair Procedures: The initial unlawful separation was perpetuated by a systematic campaign that wholly abandoned fundamentally fair procedures. Defendants, acting in concert, deprived Plaintiffs of due process by:

- Obtaining Orders Through Judicial Deception: Knowingly submitting falsified DCFS reports, altered police records, and fraudulent declarations to the court to create a false narrative that concealed child abuse. These material misrepresentations and omissions corrupted the judicial process and ensured that any resulting orders were obtained through fraud, not fairness.

- Operating Without Jurisdiction or Notice: Conducting at least 31 sham proceedings before a judicial officer who lacked jurisdiction due to the absence of a valid stipulation, rendering every order issued void ab initio. These proceedings were consistently held without proper notice, without the filing of required motions, and without providing Michael Tatum a meaningful opportunity to be heard, thereby violating the most basic tenets of due process.

- Denial of Evidentiary Hearings: Systematically stripping Michael Tatum of his fundamental parental rights and custody of J.T. without conducting any evidentiary hearings, without taking sworn testimony, and without making the required statutory findings.

212. The entire state court process following the lawful July 19, 2022, order was a procedural fiction, orchestrated by Defendants to give the appearance of lawfulness to an unconstitutional deprivation of Plaintiffs' liberty interests.

II. Violation of Substantive Due Process

213. A substantive due process claim arises when state interference with the parent-child relationship is for "purposes of oppression" and is so arbitrary and egregious that it "shocks the conscience." Defendants' conduct was not in furtherance of any legitimate state interest, such as protecting a child, but was instead an oppressive abuse of governmental power that shocks the conscience.

214. The "deliberate indifference" standard applies because Defendants' actions were not the result of split-second decisions made in a crisis. Instead, they had extended opportunities for

actual deliberation over a period of years, allowing them ample time to make unhurried

judgments. Their protracted failure to act in a constitutionally permissible manner demonstrates

deliberate indifference. Their conduct shocks the conscience because they:


- Acted for Purposes of Oppression, Not Protection: The Defendants' multi-year,

coordinated effort was not designed to further the best interests of J.T. but to oppress and

retaliate against Michael Tatum for his attempts to protect his son and expose their misconduct.

They weaponized the legal system to dismantle lawful custody, punish a protective parent, and

conceal abuse.

- Showed Deliberate Indifference to a Known Risk of Harm: Defendants were fully

aware of the credible and repeated disclosures of physical abuse made by J.T. and documented

by police and medical experts. Despite this knowledge, they acted with deliberate indifference by

not only failing to protect J.T. but by actively suppressing the evidence of his abuse and ensuring

he remained in the custody of his abuser. This conscious disregard for the child's safety in a

situation where deliberation was practical constitutes a shocking abuse of power.

- Engaged in Arbitrary and Conscience-Shocking Abuses of Power: The

coordinated fabrication of court orders, falsification of official records, orchestration of sham

hearings, and the use of judicial power to retaliate against a litigant are not legitimate

governmental actions. This pattern of conduct, sustained over several years by multiple state

actors, represents a profound and arbitrary abuse of power far removed from the bounds of law,

and is the type of oppressive government action that the Due Process Clause forbids

Third Claim - Claim for State-Created Danger — Fourteenth Amendment Due Process
(Against All Individual Defendants)

215. As previously explained, the plaintiff has the burden of proving that the acts of the defendants deprived the plaintiff of rights under the United States Constitution. In this case, Plaintiff J.T. alleges that the Defendants deprived him of his rights under the Fourteenth Amendment to the Constitution when they used their authority as state actors to dismantle a lawful protective order and affirmatively place him in the care and custody of his known abuser, thereby creating a danger of physical and emotional harm that would not have otherwise existed.

216. Under the Fourteenth Amendment, a person has the constitutional right to be free from a government employee affirmatively placing that person in a position of actual, particularized danger if the government employee acted with deliberate indifference to a known or obvious danger. To prove the defendants deprived the plaintiff of this Fourteenth Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

217. First, the defendants committed an affirmative act. The Defendants committed a series of coordinated, affirmative acts designed to strip away the legal protections afforded to minor Plaintiff J.T. and transfer his custody. These affirmative acts include, but are not limited to:

- The creation, service, and enforcement of a fraudulent and counterfeit temporary restraining order on July 22, 2022, to effectuate the initial unlawful seizure of J.T.

- The issuance of numerous void judicial orders by Defendant Hernandez that systematically dismantled the lawful sole custody held by the protective parent, Michael Tatum.

- The knowing submission of falsified DCFS reports by Defendants Ngo and Martinez, and altered police records by Defendant Shornick, which suppressed and misrepresented evidence of child abuse.

- The deliberate misrepresentation of J.T.'s direct disclosures of abuse and fear to the court by Defendant Navarro.

- The providing of fabricated psychological conclusions and unethical custody recommendations by Defendant Moss to legitimize the transfer of J.T. into an abusive environment.

218. Collectively, these actions constitute an affirmative and unlawful exercise of state power.

219. Second, the affirmative acts placed the plaintiff in a position of an actual, particularized danger by creating or exposing the plaintiff to a danger that he would not have otherwise faced. On July 19, 2022, J.T. was in a position of safety, protected by a lawful court order that granted his father sole legal and physical custody and found Defendant Katie Hartsell to be a risk. The Defendants' affirmative acts stripped away this protection and placed J.T. in an actual, particularized danger: the immediate and ongoing risk of physical and emotional abuse at the hands of Defendants Katie Hartsell and Thomas Plummer.

220. This was not a generalized risk. It was a specific danger posed by individuals with a documented history of violence and abuse, from whom J.T. had made specific disclosures of harm. He was exposed to a danger of being punched, slapped, and psychologically coerced—a danger he would not have faced had the Defendants not affirmatively dismantled the pre-existing protective legal framework.

221. Third, the defendants acted with deliberate indifference to a known or obvious danger. In this context, "deliberate indifference" means that the defendants knew that something was going to happen but ignored the risk and still exposed the plaintiff to that risk. The Defendants possessed actual knowledge of the obvious danger to J.T. and disregarded it. Their knowledge was based on:

- The initial judicial findings of risk underlying the July 19, 2022, protective order.

- Defendant Hartsell's felony domestic violence arrest.

- J.T.'s repeated and direct disclosures of physical abuse and fear to police, to Defendant Navarro (minor's counsel), and to Defendant Moss (therapist).

- The original, unaltered DCFS and police reports which, according to the complaint, substantiated physical abuse before they were falsified.

222. Despite knowing that J.T. had been harmed and was afraid of being harmed again by specific people, each Defendant chose to ignore that risk. They affirmatively acted to place J.T. back into the direct custody and control of his abusers, demonstrating a conscious disregard for the consequences to his safety.

223. Fourth, the affirmative acts that created the actual, particularized danger caused injury to the plaintiff that was foreseeable. The Defendants' affirmative acts directly and proximately caused J.T. to suffer further physical and psychological injury. The complaint documents numerous instances of subsequent harm after he was placed in Hartsell's care,

including bruising, facial swelling, and severe emotional distress, as corroborated by police reports, visitation monitor logs, and a forensic medical expert.

224. This injury was entirely foreseeable. It is a known and obvious consequence that if a child is forcibly placed in the care of a known abuser from whom he has already sought protection, that child is likely to be abused again. The subsequent harm J.T. suffered was not an unexpected tragedy but the predictable result of the Defendants' deliberately indifferent actions.

Fourth Claim - Claim for Deliberate Fabrication of Evidence — Fourteenth Amendment Due Process
(Against All Individual Defendants)

225. As previously explained, the plaintiffs have the burden of proving that the acts of the defendants deprived the plaintiffs of rights under the United States Constitution. The Fourteenth Amendment protects against being subjected to a deprivation of liberty based on false evidence that was deliberately fabricated. In this case, Plaintiffs Michael Tatum and J.T. allege the Defendants deprived them of their rights under the Fourteenth Amendment to the Constitution when they orchestrated a systematic deprivation of Plaintiffs' liberty interest in their parent-child relationship by knowingly creating and using fabricated evidence in a state court dependency proceeding.

226. For the plaintiffs to prevail on their claim of deliberate fabrication of evidence, they must prove the following element by a preponderance of the evidence:

227. The defendants deliberately fabricated evidence that was used to deprive the plaintiffs of their liberty.

228. The "deprivation of liberty" at issue is the unconstitutional separation of a father and child, accomplished by stripping Plaintiff Michael Tatum of his lawful custody of minor Plaintiff

J.T. and maintaining that separation through a series of sham judicial proceedings. The Defendants deliberately fabricated the following evidence, which was then used to cause this deprivation of liberty:

- A Counterfeit Judicial Order: Defendant Melanie Shornick, in concert with Defendant Katie Hartsell, deliberately fabricated a temporary restraining order (DV-110) on July 22, 2022. They knew this document was not lawfully filed or signed, yet they presented it as a valid court order to coerce the initial unlawful seizure of J.T., thereby initiating the deprivation of liberty.

- Falsified Government Records: Defendants Christine Ngo and Rene Martinez, acting as DCFS social workers, deliberately fabricated official reports by reversing material facts, reclassifying documented injuries as insignificant, and inserting false denials of abuse. Defendant Melanie Shornick further fabricated evidence by altering official Glendale Police Department records to remove incriminating findings and insert exculpatory narratives. This fabricated evidence was submitted to the court to wrongfully discredit J.T.'s abuse disclosures and create a false basis for removing him from his protective father.

- Fabricated Expert Opinions and Testimony: Defendant Steven Moss, a licensed psychologist, deliberately fabricated professional conclusions by providing false psychological assessments without proper evaluation and issuing unethical custody recommendations designed to legitimize the unlawful custody arrangement. Defendant F. Edward Navarro, acting as Minor's Counsel, deliberately fabricated his summary of J.T.'s disclosures, falsely testifying in court that J.T. denied abuse and felt safe, when in fact J.T. had disclosed the opposite.

229. This body of deliberately fabricated evidence was the direct and proximate cause of the Plaintiffs' deprivation of liberty. These false documents and statements were the primary instruments relied upon in the jurisdictionally void proceedings to justify stripping Michael Tatum of his parental rights and maintaining the unconstitutional separation of father and son.

Fifth Claim - Claim for Deliberate or Reckless Suppression of Evidence — Fourteenth
Amendment Due Process
(Against All Individual Defendants)

230. As previously explained, the plaintiffs have the burden of proving that the acts of the defendants deprived the plaintiffs of rights under the United States Constitution. The Fourteenth Amendment protects against a person being subjected to a deprivation of liberty when favorable evidence has been deliberately or recklessly withheld. In this case, Plaintiffs allege the Defendants deprived them of their rights under the Fourteenth Amendment to the Constitution when they conspired to conceal and suppress material exculpatory evidence during state dependency proceedings, leading directly to the unlawful and ongoing separation of a father and child.

231. For the plaintiffs to prevail on their claim of deliberate or reckless suppression of evidence, they must prove the following elements by a preponderance of the evidence:

232. First, the defendants suppressed evidence that was favorable to the accused from the court.

233. The Defendants, individually and in concert, suppressed a significant body of evidence that was favorable to Plaintiffs. This suppressed evidence included:

- Direct Disclosures of Abuse: J.T.'s repeated, direct, and consistent disclosures of physical abuse and fear of Katie Hartsell and Thomas Plummer, made to Defendants Navarro and Moss, and to the Glendale Police. This evidence was favorable because it substantiated the need for protection and directly contradicted the narrative that Michael Tatum was alienating the child.

- Original, Unaltered Investigative Reports: The original, unaltered DCFS and Glendale Police Department reports which, prior to their falsification by Defendants Shornick, Ngo, and Martinez, contained findings of "suspected (substantiated) physical child abuse." This evidence was favorable as it provided official corroboration of the danger J.T. faced.

- Corroborating Medical and Video Evidence: Forensic medical findings from Dr. Bellino confirming J.T.'s injuries were consistent with blunt-force trauma, and surveillance footage capturing Defendant Thomas Plummer actively coaching J.T. to fabricate allegations against his father. This evidence was highly favorable as it proved both the abuse and the Defendants' scheme to conceal it.

234. Second, the suppression harmed the accused.

235. The suppression of this evidence directly and profoundly harmed both Plaintiffs. It harmed Michael Tatum by causing the wrongful deprivation of his fundamental right to parent his child, subjecting him to retaliatory sanctions, and leading to his designation as a vexatious litigant based on a record deliberately stripped of the truth. It harmed minor Plaintiff J.T. by denying him the protection of the court, removing him from his safe and protective parent, and forcing him to remain in an abusive and coercive environment. The harm was the unconstitutional deprivation of their liberty interest in their familial relationship.

236. Third, the defendants acted with deliberate indifference to the plaintiffs' rights or for the truth in suppressing the evidence.

237. "Deliberate indifference" is the conscious or reckless disregard of the consequences of one's acts or omissions. The Defendants did not merely neglect to present this evidence; they actively concealed it with a conscious or reckless disregard for the truth and for the Plaintiffs' constitutional rights. Defendants Navarro and Moss heard the disclosures of abuse firsthand and chose to misrepresent them. Defendants Shornick, Ngo, and Martinez had access to the original, truthful reports and chose to alter and suppress them. They knew that withholding this crucial, exculpatory evidence would result in a grave miscarriage of justice, yet they ignored that risk and proceeded, demonstrating a deliberate indifference that shocks the conscience.

Sixth Claim - Claim for First Amendment Retaliation
(Against Defendants Dennis F. Hernandez, Melanie Shornick, and F. Edward Navarro)

238. As previously explained, the plaintiff has the burden of proving that the acts of the defendant deprived the plaintiff of rights under the United States Constitution. In this case, Plaintiff Michael Patrick Tatum alleges the defendants deprived him of his rights under the First Amendment to the Constitution when, in direct response to his lawful court filings exposing their unconstitutional conduct, they initiated a coordinated campaign of retaliatory legal action designed to punish him, silence his speech, and block his access to the courts.

239. Under the First Amendment, a citizen has the right to petition the government for a redress of grievances and to access the courts. To establish the defendants deprived the plaintiff of this First Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

240. First, the plaintiff was engaged in a constitutionally protected activity.

241. Plaintiff Michael Tatum engaged in constitutionally protected activity by exercising his First Amendment right to petition the government and access the courts. This protected activity took the form of filing numerous legal documents in the Los Angeles Superior Court, including an ex parte application on April 28, 2025, and motions to disqualify opposing counsel on April 14, 2025. In these filings, he sought to redress the ongoing constitutional violations against himself and his minor son, J.T., by presenting evidence of jurisdictional defects, fabricated orders, and fraud on the court committed by the Defendants. The act of filing court papers to expose official misconduct and seek judicial relief is a core, protected petitioning activity.

242. Second, the defendants' actions against the plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity.

243. The Defendants, acting under color of state law, took severe adverse actions against Plaintiff Tatum that would deter a person of ordinary firmness from continuing to file motions or otherwise challenge their conduct. These actions include:

- On May 7, 2025, just ten days after Plaintiff filed his ex parte application exposing the fraud, Defendant Dennis F. Hernandez issued, on his own motion, an Order to Show Cause to declare Plaintiff a vexatious litigant.

- On May 28, 2025, Defendant Melanie Shornick sought crippling monetary sanctions of over $35,000 against Plaintiff, based on what the complaint alleges were fabricated billing records.

- On June 20, 2025, Defendant Hernandez, acting in coordination with Defendants Shornick and Navarro, formally declared Plaintiff a vexatious litigant, prohibiting him from filing any further pleadings without prior judicial approval.

244. The combined threat and ultimate imposition of these measures—financial ruin through massive sanctions and a complete bar on future access to the court to protect his child—constitute a powerful chilling effect. A person of ordinary firmness would be intimidated and deterred from continuing their protected speech in the face of such overwhelming official opposition.

245. Third, the plaintiff's protected activity was a substantial or motivating factor in the defendants' conduct.

246. A substantial or motivating factor is a significant factor. The plaintiff's protected activity was the substantial and motivating factor for the defendants' retaliatory conduct. The causal link is established by the direct and immediate temporal proximity between Plaintiff's filings and the adverse actions. The retaliatory campaign did not begin until after Plaintiff submitted filings that directly implicated the Defendants in serious misconduct.

247. Specifically, Defendant Hernandez's sua sponte Order to Show Cause was issued in the very same order that denied the ex parte application in which Plaintiff had accused him of acting without jurisdiction. The sanctions motion and vexatious litigant designation were not based on a long history of frivolous filings but were initiated immediately in response to the specific filings that sought to expose the Defendants' unconstitutional enterprise. This sequence of events demonstrates that the Defendants' actions were not a legitimate use of judicial

procedure but were motivated by a desire to punish Plaintiff for his protected speech and prevent further exposure of their wrongdoing.

Seventh Claim - Claim for Municipal Liability Based on Unlawful Practice or Custom (42 U.S.C. § 1983)
(Against Defendant Los Angeles County Superior Court)

248. To prevail on Plaintiffs Michael Patrick Tatum and J.T.'s § 1983 claim against defendant Los Angeles County Superior Court (LASC), alleging liability based on a widespread and longstanding practice or custom, the Plaintiffs must prove each of the following elements by a preponderance of the evidence:

249. A LASC official or employee acted under color of state law.

• Commissioner Dennis F. Hernandez, an official and employee of the defendant LASC, acted under color of state law at all relevant times. He did so by presiding over judicial proceedings, issuing minute orders, making custody rulings, and imposing sanctions in his official capacity as a judicial officer of the LASC.

250. The acts of the LASC official or employee deprived the Plaintiffs of rights under the United States Constitution.

• The acts of Commissioner Hernandez, as detailed in the complaint, deprived Plaintiffs of their rights under the United States Constitution, including their Fourteenth Amendment rights to procedural and substantive due process and their liberty interest in their parent-child relationship. This deprivation occurred through a sustained pattern of actions taken without jurisdiction, the issuance of void orders, the denial of notice and an opportunity to be heard, and the facilitation of an unconstitutional deprivation of custody based on fabricated evidence.

251. The LASC official or employee acted pursuant to a widespread or longstanding practice or custom of the LASC.

- Commissioner Hernandez acted pursuant to a widespread and longstanding practice or custom of the defendant LASC. A "practice or custom" means a longstanding, widespread, or well-settled practice or custom that constitutes a standard operating procedure of the LASC.

252. This custom consisted of the LASC's deliberate indifference to, and administrative complicity in, persistent constitutional violations committed by its judicial officers. The LASC maintained a standard operating procedure of failing to supervise, train, and discipline its personnel. This practice is established by the repeated constitutional violations—including at least 31 sham proceedings—that were not properly investigated and for which the violator was not disciplined, reprimanded, or punished.

253. Crucially, this custom of non-intervention is proven by the LASC's own actions at its highest administrative level. On May 29, 2025, Plaintiff Tatum filed a formal REQUEST FOR EMERGENCY ADMINISTRATIVE STAY directly with the Presiding Judge of the LASC, providing direct notice of the ongoing jurisdictional violations, procedural fraud, and imminent unconstitutional harm. The LASC's failure to act upon, or its active suppression of, this emergency filing demonstrates that its standard operating procedure is to ignore and fail to investigate credible allegations of severe misconduct against its own judicial officers, thereby ratifying the unconstitutional conduct through its inaction.

254. The LASC's widespread or longstanding practice or custom caused the deprivation of Plaintiffs' rights; that is, the LASC's practice or custom was so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the ultimate injury.

255. The LASC's custom of failing to supervise and discipline its judicial officers was the "moving force" behind the constitutional violations suffered by the Plaintiffs. The LASC's deliberate indifference created an environment of impunity where its officials, like Commissioner Hernandez, understood that they could operate outside the bounds of their jurisdiction without fear of administrative oversight or correction.

256. This causal link is demonstrated most clearly by the LASC's suppression of the emergency stay request. The LASC, through its administrative leadership, was given a direct and explicit opportunity to intervene and halt the impending constitutional violations detailed in the May 30, 2025, hearing. By ignoring or suppressing that filing, the LASC's custom of inaction became the direct moving force that allowed the subsequent unconstitutional acts—including the imposition of retaliatory sanctions and the declaration of Plaintiff as a vexatious litigant—to proceed unchecked. The institution's failure to act at this critical juncture was not merely a background condition; it was the specific act of nonfeasance that ensured the ultimate injury would occur. But for the LASC's well-settled practice of ignoring such pleas for intervention, the sustained deprivation of Plaintiffs' rights could have been prevented.

## PRAYER FOR RELIEF

257. WHEREFORE, Plaintiffs Michael Patrick Tatum and J.T. respectfully pray that this Court enter a judgment in their favor and against the Defendants, jointly and severally, granting the following relief:

### A. FOR EMERGENCY AND PERMANENT INJUNCTIVE RELIEF:

• An immediate Temporary Restraining Order, followed by a Preliminary and Permanent Injunction, compelling all Defendants, and any persons acting in concert with them, to immediately and peacefully return minor Plaintiff J.T. to the sole legal and physical custody of his father, Plaintiff Michael Patrick Tatum;

• A Preliminary and Permanent Injunction enjoining all Defendants from enforcing, or seeking to enforce, all orders, writs, or judgments issued in Los Angeles Superior Court Case No. BD649563 after July 19, 2022;

• A Preliminary and Permanent Injunction enjoining all Defendants from taking any action to enforce the fraudulent and retaliatory $35,000 sanction order and the vexatious litigant designation issued against Plaintiff Michael Patrick Tatum;

• An order authorizing the United States Marshals Service to take all actions necessary to secure the safe return of minor Plaintiff J.T. to his father and to enforce the orders of this Court.

B. FOR DECLARATORY JUDGMENT:

• A declaration that the Defendants, acting under color of state and federal law, violated Plaintiffs' rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution;

• A declaration that all orders, rulings, and judgments entered in Los Angeles Superior Court Case No. BD649563 after July 19, 2022, are void ab initio for lack of jurisdiction and for being procured through fraud on the court;

- A declaration that the custody and protective order issued by the Los Angeles Superior Court on July 19, 2022, is the sole valid and legally enforceable order governing the custody of minor Plaintiff J.T.

## C. FOR MONETARY RELIEF:

- Compensatory Damages in favor of Plaintiff Michael Patrick Tatum and against all Defendants, jointly and severally, in an amount to be determined at trial, but no less than $12,750,000, for the deprivation of his constitutional rights, emotional distress, reputational harm, and other injuries suffered because of the Defendants' unlawful actions;

- Compensatory Damages in favor of minor Plaintiff J.T. and against all Defendants, jointly and severally, in an amount to be determined at trial, for the physical harm, severe emotional distress, psychological trauma, and deprivation of his constitutional rights;

- Equitable Restitution for coerced expenditures, including all legal fees, filing costs, travel expenses, investigative outlays, or any other coerced or illegally seized expenditure wrongfully incurred as a direct consequence of Defendants' fraudulent actions and jurisdictionally void proceedings under color of state law. Such restitution is necessary to restore Plaintiff to his rightful financial position prior to the unlawful deprivation, in an amount of no less than $400,000;

- Punitive Damages against each of the individual Defendants in their individual capacities in an amount sufficient to punish their willful, malicious, and reckless disregard for Plaintiffs' constitutional rights and to deter such conduct in the future.

D. FOR COSTS AND FEES:

- An award of reasonable attorneys' fees and all litigation costs pursuant to 42 U.S.C. § 1988.


E. FOR SUCH OTHER RELIEF:

- Such other and further relief as the Court deems just, equitable, and proper.


JURY DEMAND

258. Plaintiffs demand a trial by jury on all claims and issues so triable.

VERIFICATION

I, Michael Patrick Tatum, declare as follows:


1. I am the Plaintiff in the above-entitled action, proceeding individually and as next friend for minor Plaintiff J.T. I have read the foregoing VERIFIED COMPLAINT FOR EMERGENCY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF; DECLARATORY JUDGMENT; EQUITABLE RESTITUTION AND DAMAGES and I am personally familiar with the facts and events stated therein.

2. All the factual allegations made in the foregoing Verified Complaint are true and correct based on my personal knowledge. Where allegations are based on information and belief, I believe them to be true after conducting a reasonable inquiry.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: November 16, 2025
Executed at: Los Angeles, California



MICHAEL PATRICK TATUM
Plaintiff, Pro Se